THE AMERICAN BRASS COMPANY *v.* ANSONIA BRASS WORKERS' UNION LOCAL 445, INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS, ET AL.

BALDWIN, INGLIS, QUINLAN, WYNNE, and DALY, Js.

Argued October 13—decided December 1, 1953

*Chester T. Corse,* with whom was *Thomas R. Robinson,* for the appellants (defendant Ansonia Brass Workers' Union Local 445, Industrial Union of Marine and Shipbuilding Workers, et al.).

*David R. Lessler,* for the appellee (named defendant).

DALY, J. The plaintiff is a manufacturing corporation. The defendants are two local labor unions and some of their respective officers. Both unions are voluntary associations located in this state. One of them, Ansonia Brass Workers' Union Local 445, International Union of Mine, Mill and Smelter Workers, was affiliated with the Congress of Industrial Organizations, known as the C.I.O. The local is referred to herein as International Local. The other is known as Local 445, Industrial Union of Marine and Shipbuilding Workers of America, C.I.O., and is referred to herein as Industrial Local. The principal question involved in this case is which of these two groups is entitled to money collected by the plaintiff in a checkoff of union dues. The trial

court awarded the fund to International Local, and Industrial Local has appealed.

Approximately fifty of the assignments of error consist of claims that the court erred in refusing to find material facts set forth in the draft finding and in finding, without evidence, certain facts set forth in the finding. Many of these claims refer to immaterial facts. Several of them refer to facts which were supported by evidence. Others refer to facts which were not admitted and which were not undisputed. None of the changes sought would directly affect the ultimate facts upon which the judgment depends. No useful purpose would therefore be served by correcting the finding. *Beach* v. *First National Bank*, 107 Conn. 1, 4, 138 A. 905.

The finding contains the following facts: Prior to January, 1947, the members of both groups belonged to International Local, which operated under and was governed by the constitution of the International Union of Mine, Mill and Smelter Workers, hereinafter called International Union. International Local was chartered by International Union in 1938. The constitution of International Union provided that a local union affiliated with it could withdraw from it. It contained no provision specifying the method by which such withdrawal might be accomplished. International Local has been and is composed of workers in the maintenance and production departments at the plaintiff's Ansonia plant, together with employees of another corporation.

On May 18, 1946, the plaintiff and International Local executed a collective bargaining agreement. This agreement provided, among other things, that the plaintiff would deduct union dues and initiation fees from the wages of members of International Local in its employ. The company fulfilled all the

obligations assumed by it under the agreement, and during the months of January, February, March and April, 1947, collected $9899 by deductions from wages of employees.

On January 27, 1947, a petition signed by thirteen members of International Local was presented to the president of that body requesting that a special meeting be called for the purpose of effecting the withdrawal of the local from International Union. A special meeting of the members of International Local was called and held on January 31, 1947, for the purpose of considering whether International Local should withdraw from International Union. This meeting was adjourned to February 9, 1947, "in order to hear speakers for both sides of the question on withdrawal and to take a vote thereon." The adjourned meeting was held on February 9, 1947, and, following discussion of the merits and advisability of withdrawing from International Union, a vote was had by ballot. Out of a total of 604 votes cast, 294 were recorded in favor of withdrawal and 299 as opposed to withdrawal; 11 ballots were marked void. The meeting adjourned without date. On January 31, 1947, and on February 9, 1947, there were about 2600 members of International Local.

On February 14, 1947, a petition signed by more than one thousand members of International Local was presented to its executive board. By it, the signers demanded that the body arrange for a "referendum ballot" on the question whether International Local should withdraw from International Union. There was a meeting of the executive board on the day the petition was presented and it was voted "that the executive board accept the wishes of over a thousand members in good standing to have a referendum ballot and proceed with a ballot on the question to

withdraw from the International Union of Mine Mill and Smelter Workers." The president fixed February 27, 1947, as the date for the referendum and arrangements were made for it. On February 27, 1947, the so-called referendum vote was taken and 930 votes were cast in favor of withdrawal and 299 votes against withdrawal; 5 ballots were declared void. Thereafter some, if not all, of those who favored withdrawal disassociated themselves from International Union and affiliated with the Provisional Metal Workers' Council and later with the Industrial Union of Marine and Shipbuilding Workers. In March, 1947, International Local and Industrial Local made demands upon the plaintiff for the funds in its hands.

In April, 1947, International Local filed a petition under the National Labor Relations Act pursuant to which a consent election was held on May 22, 1947, to determine the collective bargaining representative of the production and maintenance workers of the company. At this election 934 votes were cast for Industrial Local, 1674 were cast for International Local, 57 votes were cast for neither union, some ballots were declared void, and one was challenged. As a result, International Local was declared to be the collective bargaining agent of the production and maintenance employees of the company.

Industrial Local contends that International Local withdrew from International Union by the referendum ballot. It claims that, as a result thereof, the funds less allowable expenses and counsel fees belong to its group. All parties agree that the local union could have withdrawn from International Union if a majority of the members had voted to do so at a meeting duly called and legally held. If the local union was to be dissolved or was to with-

draw or secede from International Union, such a purpose, admittedly, could be achieved only as the result of the valid action of the members. *Bridgeport Brass Workers Union* v. *Smith,* 136 Conn. 654, 658, 74 A.2d 191. International Local was governed in part by the constitution of International Union. This provided for referenda to the membership of its locals on certain specified questions such as proposed amendments of the constitution of International Union, removal of officers, whether a strike should be called and whether an assessment should be levied on the members of a local. There was no provision for a referendum on the question whether a local should withdraw from International Union. In the light of the well-recognized principle of construction that the expression of one, by implication, excludes all others, it is clear that there was no authority in the constitution of International Union for a referendum on the question of withdrawal of a local. Likewise, the by-laws of International Local conferred no authority on its executive board, its president or any other officer to call for a ballot of its members or vote on any subject except during, or as authorized by, a convened meeting of the local. It follows that valid action of withdrawal from International Union could be taken by the local only at a duly constituted meeting of the local.

There is a substantial difference between a meeting and a referendum. A meeting is "an assembling of a number of persons for the purpose of discussing and acting upon some matter or matters in which they have a common interest." Black's Law Dictionary (3d Ed.). A referendum is a "practice or method for ascertaining the will of members of a union, association, or group of persons; as, a *referendum* in a railroad union to determine approval or disapproval of

a policy." Webster's New International Dictionary (2d Ed.). An opportunity for discussion of a matter to be acted upon is an essential part of a meeting. Such discussion or the opportunity for it is not a part of a referendum. The taking of the so-called referendum ballot on February 27, 1947, was an attempt to originate and finally dispose of the matter of withdrawal of the local union without affording every member an opportunity to discuss the matter and to hear discussion of it. There was no meeting of the local union held upon February 27, 1947, or at any other time, at which a majority of the members voted in favor of withdrawal. The so-called referendum ballot was void. When a labor union or other private organization proceeds in violation of its constitution or by-laws, its actions are void. *Minnesota Council of State Employees* v. *American Federation*, 220 Minn. 179, 193, 19 N.W.2d 414. Consequently, the trial court was correct in its conclusion that the group which continued in its affiliation with International Union, i.e., the group known as International Local, was the group entitled to the assets of the local and therefore was entitled to receive the fund due from the plaintiff.

Industrial Union also contends that the judgment rendered in this case on December 22, 1950, is not a valid judgment because the memorandum of decision which directed it does not, it is claimed, comply with § 7979 of the General Statutes in that it does not cause the facts upon which the judgment was rendered to appear. Inasmuch as this was not specifically assigned as error, it is not necessary to discuss it. Practice Book § 409.

There is no error.

In this opinion the other judges concurred.