HAROLD J. JESCHOR ET AL. *v.* TOWN OF GUILFORD ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, DALY and BORDON, Js.

Argued December 7, 1955—decided January 27, 1956

*Joseph J. McGuinness* and *Thomas R. Robinson,* for the appellant (named defendant).

*Lawrence M. Dooley,* with whom, on the brief, was *Vincent P. Dooley,* for the appellees (plaintiffs).

DALY, J. The plaintiffs, owners of land in that part of the town of Guilford known as the "Westside Area" and acting as a committee on behalf of the residents of that section, brought this action, in two counts, for an injunction to restrain the defendants, the town of Guilford and its selectmen, from using land owned by the town as a public dump and to recover money damages. The defendant town has appealed from a judgment, rendered for the plaintiffs on both counts, enjoining the defendants from using or permitting the use of the land for a town dump.

The defendant town, hereinafter called the defendant, seeks certain changes in the finding, but as made it sufficiently presents the issues of law. It states the following facts: The selectmen, under direction of a town meeting held on September 25, 1952, were ordered to close an existing town dump on or before January 1, 1953, and to obtain another site. At a town meeting on December 15, 1952, an appropriation for a new site was approved, and on December 30, 1952, a twenty-five-acre tract on the south side of Peddler's Road in Guilford was purchased. The dump was established there and has been in continuous operation since January 1, 1953. The site was, under the then existing zoning regulations, in a "rural district," in which incineration or

dumping of animal or vegetable waste by the town was permitted, provided such a proposed use of the land was first submitted to and approved by the planning and zoning commission. The selectmen did not refer the proposed use of the land to the planning and zoning commission for its approval. The plaintiffs and others petitioned the selectmen to call a town meeting to act on a resolution prohibiting a dump at the location in question. The meeting was held on February 24, 1953, and the proposed resolution was defeated. The state forester and fire warden approved the location, subject to certain conditions. The town health officer received no complaints of any health hazard created by it. On March 21, 1953, the town planning and zoning commission approved the use of a fifty-acre tract, located on the north side of Peddler's Road near the dump, for an automobile junk yard, and that property has been so used since then. The bodies of junked motor vehicles were burned there on open fires.

The defendant employs a pest control service to control and combat vermin, rodents and pests at the dump. The defendant also periodically covers discarded material with sand and gravel. Rubbish and household garbage are deposited indiscriminately, and there are large accumulations of waste. A town employee works there some part of each day. He directs the discharge of rubbish, burns the combustible matter and has charge of the premises. No other provision for regulating the placing of waste is made. At a town meeting on June 2, 1953, a resolution providing for the setting of hours for the use of the dump was adopted. Open fires, often left unattended, are frequent, and smoke and odors are diffused over a large surrounding area. An

Indian hand pump and pails of water are the only equipment provided to prevent the spread of fires. The site is in a heavily wooded area more than half a mile from the nearest residence. Because of its location, the dump creates a forest fire hazard and will continue to do so as long as material is burned there. Dry weather increases this hazard. At times, the odors are offensive and unhealthy.

The plaintiff Walter W. Norton lives three miles from the dump but owns land adjoining it on the east. The plaintiff R. Walter Bishop resides one and one-half miles from it and owns land located about three-quarters of a mile from it. The home of the plaintiff Arthur J. Everle is about half a mile from the dump, and he owns land adjoining it on the west. The land of the plaintiff Everle located west of the dump and that of the plaintiff Norton located east of it were assessed at $10 per acre on the assessment list of October 1, 1952. The presence of the dump depreciates the value of the land in the surrounding area. The best use of land in the general area is development into tracts of several acres each with modest homes built thereon. While there were no sales of real property in the area for several years prior to December 30, 1952, there were three within the following year. The dump tract and a large area in the immediate vicinity were in a residence A zone at the time of the trial of this action.

The plaintiffs alleged in their first count that the conditions arising from the manner in which the dump was used and maintained constituted a nuisance. In their second count, they alleged that the defendant had a planning and zoning commission and that the acquisition of the land for use as a dump lacked legality because the matter had not been

referred to the commission for its approval, as required by statute. The court found for the plaintiffs on both counts and issued an injunction against the use of the land for a dump.

The defendant contends that the court erred in granting injunctive relief, first, because it did not find that the plaintiffs suffered irreparable damage, and, second, because the conditions arising from the use of town land for a dump did not impose upon the plaintiffs any special damage not suffered by the public in general. Since these claimed errors were not specifically included in the defendant's assignments of error and since it does not appear that the questions were distinctly raised at the trial, ruled upon and decided by the court adversely to the defendant, it is not necessary to discuss them. *State v. Van Keegan,* 142 Conn. 229, 236, 113 A.2d 141; *American Brass Co.* v. *Ansonia Brass Workers' Union,* 140 Conn. 457, 463, 101 A.2d 291; Practice Book § 409. The plaintiffs maintained that the dump created, as to them, a private nuisance. See *Brainard* v. *West Hartford,* 140 Conn. 631, 636, 103 A.2d 135. This presented a question of fact for the court to determine, and the court was justified in finding that the presence of the dump depreciated the value of the surrounding land and therefore that a private nuisance existed.

The defendant admits that on May 24, 1949, it adopted chapters 43 and 45 of the General Statutes and created a planning and zoning commission; that thereafter the commission had the powers granted and the duties imposed by the statutes contained in these chapters, including § 857,[1] and that the pro-

---

[1] "Sec. 857. MUNICIPAL IMPROVEMENTS. No action shall be taken by any municipal agency on any proposal involving the location, acceptance, widening, narrowing or extension of streets, bridges,

posed acquisition and use of the land was not referred to the commission for a report. The defendant contends that at the town meeting on December 15, 1952, the appropriation for the purchase of the property and the establishment of the dump at the Peddler's Road site were approved and that, consequently, there was no legal requirement that the matter be referred to the commission. The defendant also claims that the plaintiffs, by petitioning the selectmen to call the town meeting of February 24, 1953, at which the resolution prohibiting the dump at the location in question was defeated, selected their remedy, affirmed the legality of the proceedings establishing the dump and cannot complain of the failure to refer the matter to the commission for a report. The defendant was authorized to create by ordinance, as it did, a planning and zoning commission, having all of the powers and duties of both a zoning commission and a planning commission. General Statutes § 840. The commission

---

parkways and other public ways, the location, relocation, acquisition of land for, or the abandonment, sale or lease of, airports, parks, playgrounds and other municipally owned properties and public buildings, the extent and location of public utilities and terminals, whether publicly or privately owned, for water, sewerage, light, power, transit and other purposes, and for the extent and location of public housing projects and the redevelopment, reconditioning or improvement of specific areas until it has been referred to the commission for a report. The failure of the commission to report within thirty days after the date of official submission to it shall be taken as approval of the proposal. In the case of the disapproval of the proposal by the commission the reasons therefor shall be recorded and transmitted to the town council, where one exists, or to the board of selectmen in towns, to the warden and burgesses in boroughs, or to the legislative body in cities, as the case may be. A proposal disapproved by the commission shall be adopted by the municipality only after (a) a two-thirds vote of the town council where one exists, or a majority vote of those present and voting in an annual or special town meeting, or (b) by a two-thirds vote of the city council or the warden and burgesses, as the case may be."

was empowered to prepare, adopt and amend plans of development for the community and to set up a comprehensive plan of its own. See *Couch* v. *Zoning Commission,* 141 Conn. 349, 354, 106 A.2d 173. The circumstances and conditions in matters of zone changes and regulations were peculiarly within the knowledge of the commission. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538.

The proposal for the acquisition of the land and the location of the dump could only have been adopted by a majority vote of those present and voting at an annual or special town meeting after it had been referred to and disapproved by the commission. General Statutes § 857. As the matter had not been referred to and disapproved by the commission, no action taken at any of the town meetings held on September 25, 1952, December 15, 1952, and February 24, 1953, could legally establish the dump or affirm the legality of its establishment.

The defendant relies also upon the provisions of § 197c[2] of the 1953 Cumulative Supplement as a basis for its claim of law that the dump was legally established under the authority granted by the votes at the town meetings. It contends that § 197c granted to it the power to make by-laws and ordinances "to regulate the disposal of garbage, rubbish or waste material," the performance of a governmental function. This provision of the statute did

---

[2] "Sec. 197c. TOWNS, CITIES AND BOROUGHS MAY ENACT. ... [A]ny town . . . shall, in addition to such rights and powers as it shall have under the provisions of the statutes or by any special act, have the power to make by-laws and ordinances for the following purposes, and, when authorized by ordinances or by-laws enacted in the manner provided in section 198c, shall have power to make appropriations for the objects hereinafter specified: . . . to regulate the disposal of garbage, rubbish or waste material . . . ."

not become effective until October 1, 1953. General Statutes § 8891. The finding does not indicate that any action pertaining to the dump was taken at any town meeting after the one held on June 2, 1953. Moreover, none of the votes establishing the dump enacted a by-law or ordinance with the formalities then required for such an enactment. General Statutes § 620. This aside, the word "regulate" does not so much imply creating a new thing as arranging in proper order and controlling that which already exists. *Cote* v. *Village of Highland Park,* 173 Mich. 201, 216, 139 N.W. 69.

There is no error.

In this opinion the other judges concurred.