THE JOURNAL PUBLISHING COMPANY OF ROCKVILLE, INC., ET AL. *v.* TOWN OF ENFIELD ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 186293

Memorandum filed July 12, 1974

*Sorokin, Sorokin, Hurwitz, Wetstone & Psarakis,* of Hartford, for the plaintiffs.

*Day, Berry & Howard,* of Hartford, and *James J. Alaimo, Jr.,* of Enfield, for the defendants.

*J. Warren Upson,* of Waterbury, as amicus curiae.

ALCORN, STATE REFEREE. The plaintiffs are the publishers of a daily newspaper and two of the paper's reporters. The defendants are the town of Enfield, its town council, the individual members of the council, the town manager, the chief of police, and a police sergeant. The plaintiffs' original complaint sought temporary and permanent injunctions restraining the defendants from illegally barring the plaintiffs and other members of the press and the public from town council meetings, and also sought compensatory and punitive damages and other appropriate relief. Counsel for all parties stipulated to the court that all sessions of the town council would be open to the public and the plaintiffs until a decision on the prayer for a permanent injunction; that the claim for damages was withdrawn; and that if the essential allegations of the complaint are established, a permanent injunction is the appropriate remedy and the plaintiffs have been irreparably harmed, have no adequate remedy at law, and have standing to bring the action. At the same time all parties joined in a motion that the case be referred to me for hearing, and the court ordered the reference for a determination of the issues. The issues had not, at that time, been closed. No claim is raised over the failure to comply strictly with General Statutes § 52-434 and Practice Book §§ 351 and 353.

At the outset of the hearing, answers were filed by the defendants, and counsel for the Connecticut

Council for Freedom of Information sought, and was granted, permission to appear and file a brief as amicus curiae.

The plaintiffs have withdrawn the claims made against the chief of police and the police sergeant. The only issue is the claim for injunctive relief against the other defendants on the basis of the stipulation on file. The case arises from an incident on January 7, 1974, when Dennis Hogan, one of the plaintiff reporters, was forcibly evicted from a town council session after he had refused to comply with a request to leave.

Enfield is a town which has a charter-manager form of government. It has a town council of eleven members, the chairman of which serves as mayor. The town clerk serves as its clerk. The council holds regular monthly meetings and special meetings as necessary. The charter (c. 3 § 4) provides that "[a]ll meetings of the council for the transaction of business shall be open to the public and the votes shall be recorded as prescribed" in the General Statutes. The council has all powers and duties which, on the date of the charter, were conferred by law on boards, officers and commissions of the town, and is the exclusive legislative authority of the town. It has investigative powers over all departments, offices and agencies of the town and appoints the town manager, who is the chief executive officer of the town. The council also appoints the town attorney, the members of the zoning and planning commission, the zoning board of appeals, the board of tax review, the board of library trustees, and the town clerk, and may appoint an industrial development commission. The council itself acts as the sewer authority.

Administrative departments of the town consist of departments of finance, public works, public

safety, health, welfare, planning, social services, and libraries. The town manager has the power to appoint the directors of each of these departments and, except in the case of the health department, has the power of removal.

Power rests with the council to regulate the internal operation of all bodies and officers which it appoints, and to fix the charges to be made for town services. The town manager is directly responsible to the council for the administration of all departments, the heads of which are appointed by him. It is his duty to supervise and direct those agencies, make periodic reports to the council and attend all council meetings, prepare and have printed a town report, and submit to the council an annual budget.

The procedure adopted by the council under authority granted by the charter is to have what are called "conference sessions," regular monthly meetings, and special meetings as required. Conference sessions may be held prior to the regular monthly meeting or at any other time on call of the mayor or town manager. The conference session must be devoted exclusively to matters "regarding which the interchange of information is deemed to be essential." Whenever the mayor or town manager so requests, any matter under discussion must be treated as confidential. No formal vote may be taken at a conference session on any matter discussed nor can any council member, at a conference session, make a commitment with another member concerning a vote to be taken at a subsequent regular or special meeting of the council. At conference sessions, however, subjects to be formally acted on at a regular or special meeting are decided upon, the form of resolutions to be prepared by the town manager for formal vote is suggested, and other matters discussed are not assigned for formal vote.

Attendance at a conference session may be limited to council members but other persons may be invited as considered necessary for advice or information. The town manager regularly attends.

The regular monthly meetings are held on the second Monday of the month in the council chamber on the second floor of the town hall. Conference sessions, which are also called "work" sessions, are customarily held in a room on the third floor of the town hall. Conference or "work" sessions are usually held on the first Monday of each month but may be held at other times if need arises. The town manager prepares the agenda for all regular or special meetings and conference sessions of the council. No record of the discussions at conference sessions is made by the council but the town manager makes notes for his personal use of matters selected for formal vote and such items as he considers pertinent to his work. The copies of his notes which were offered in evidence are mainly unintelligible. Minutes of regular or special meetings are kept and recorded by the town clerk or assistant town clerk.

Under the procedure which is customarily followed, the agenda prepared by the town manager for the council's consideration on any given date may list subjects for consideration at a regular meeting, a special meeting, a conference or "work" session, a sewer authority meeting, or a combination of any two or all of them. Notice of the agenda is given to the public and the press several days before the date fixed for the meeting or conference session. The agenda for conference sessions normally consists primarily of administrative or executive matters such as reports from or problems of the various town agencies, appointments, the purchase or sale of land, transfer of appropriations, rental of school properties, sewer or highway construction problems,

negotiations of various sorts, and contract awards. When need arises, the subject of an ordinance appears on the agenda. Frequently an item designated only as "legal matters" appears. The subjects for consideration as "legal matters" are never specified. The public and the press are freely admitted to conference sessions, as well as to regular or special meetings or sewer authority meetings, until an item on the agenda designated as "legal matters" is reached. At that point the public and press may be asked to leave. On some occasions they have not been asked to leave but, when requested to leave, they have, in the past, complied.

On January 4, 1974, the town manager issued an agenda for a "work" session, a sewer authority meeting, and a special meeting to be held by the council in the conference room in the town hall at 8 p.m. on January 7, 1974. Item 1 on the agenda listed ten subjects for consideration at the work session. Item 2 listed three subjects for consideration by the sewer authority. Item 3 listed one appointment item for the special meeting. Item 4 listed only "legal matters."

The meeting was open to and attended by members of the public and the press, including the plaintiff Dennis Hogan, until item 4 of the agenda was reached. At that point the public and the press were asked to leave. Hogan refused to leave because the council had not voted to go into executive session pursuant to General Statutes § 1-21. Thereupon, he was forcibly removed by the police at the request of the council chairman.

The plaintiffs' primary claim is that the council's conference or "work" sessions are meetings of the council and as such must be open to the public unless an executive session is voted as provided by General Statutes § 1-21. The defendants claim that the conference or "work" sessions are not meetings of the

council because they are held merely for the exchange of information, after which no votes or formal actions are taken, and that they are open to the public unless the discussion relates to matters concerning which publicity would not be in the public interest.

The item "legal matters" was not assigned on the January 7, 1974, agenda specifically for the work session, the sewer authority meeting, or the special meeting. Instead, it appeared as a separate item which could have related to subjects for consideration by the council in any of the three procedures which had been assigned for that date. Evidence as to how all of the business was actually conducted on that evening is scanty. The meeting began at 8 p.m. as scheduled. There is no evidence concerning what went on at the work session. The council took up its agenda as the sewer authority but evidence concerning that action is absent. The minutes of the special meeting recite only that it was called to order at 11:27 p.m. and, on motion, was adjourned at 11:28 p.m. When item 4 on the agenda, "legal matters," was reached, the public and the press were asked to leave. Hogan refused to leave unless an executive session was voted, and after he was removed, an appraisal report relating to the acquisition by the town of a parcel of land and a claim concerning a highway defect which was pending against the town by a motorist were discussed. Whether this discussion is to be considered, under the circumstances disclosed, as having been a part of the conference or "work" session or of the sewer authority meeting is immaterial. It could not well have been incident to the special meeting because that was adjourned without action on the subjects discussed.

The case revolves about the basic proposition that public knowledge of the discussions and con-

siderations upon which the action of governmental agencies is based is essential to the proper functioning of the democratic process. See *Near* v. *Minnesota ex rel. Olson*, 283 U.S. 697, 719–20. Under the English common law there was no public right to attend the meetings of public bodies. Note, "Open Meeting Statutes: The Press Fights for the 'Right to Know,'" 75 Harv. L. Rev. 1199, 1203. As the law in the United States has developed in conformity to our system of government, it has recognized that the consent of the governed can only be intelligently expressed when it is based on reasonable knowledge of the reasons for the acts and purposes of government. A discussion of recent case law appears in an annotation at 38 A.L.R.3d 1070.

Necessarily, some public business may properly be conducted without being subject to public scrutiny. Instances occur in which governmental bodies are confronted with situations in which premature publicity would be highly detrimental to the public interest, would violate personal privacy, make confidential conferences with legal counsel impossible, or result in other harm to the good of the community. Eminent authority has approved the secrecy which shrouded the deliberations of the delegates to the convention which met in Philadelphia in 1787 from which the constitution of the United States evolved. 1 Bryce, The American Commonwealth (2d Ed.) p. 24. It is common knowledge that the Congress works through committees and that much of its work is done in closed committee meetings.

The extent to which public business should be done in public and to what extent public scrutiny may be curtailed have been, and are, a vexing problem. The attempt to solve the problem has varied in the several states. Note, 38 A.L.R.3d 1070.

Connecticut has met the problem so far as the General Assembly is concerned by providing that

"[t]he debates of each house shall be public, except on such occasions as in the opinion of the house may require secrecy." Conn. Const. art. III § 16. In the case of certain other governmental agencies, it has provided by statute, so far as now material: "The meetings of all administrative and executive boards, commissions, agencies, bureaus, committees and other bodies of the state or any of its political subdivisions shall be open to the public when in session. Such meetings shall be closed to the public when in executive session when so voted by a majority of the members of such body present and voting. The votes of each member of any such body upon any issue before such body shall be reduced to writing and made available for public inspection within forty-eight hours, excluding any Saturday, Sunday or legal holiday, and shall also be recorded in the minutes of the session at which taken, which minutes shall be available for public inspection at all reasonable times. . . ." General Statutes § 1-21.

Thus the policy of the state is that the General Assembly and all executive and administrative boards and like bodies shall have the discretion to transact some public business out of the presence of the public. Necessarily, the exercise of that discretion must be reasonable. A public record must be provided of the votes of all legislative bodies as well as of executive and administrative boards; General Statutes § 1-19; but the constitution provides, in the case of the General Assembly, that "[e]ach house shall keep a journal of its proceedings, and publish the same when required by one-fifth of its members, except such parts as in the judgment of a majority require secrecy." Conn. Const. art. III § 14.

The charter of the town of Enfield purports to go further than General Statutes § 1-21 by providing, as quoted above, that all meetings of the

council for the transaction of business must be open to the public, and the plaintiffs now assert that the council is thus deprived, by charter, of the right to hold an executive session. This was not the claim asserted by Hogan, who was the only plaintiff involved in the incident giving rise to this case. He asserted the right to remain at the January 7 meeting unless the council voted to hold an executive session. Moreover, the Enfield charter was adopted under the so-called Home Rule Act. That act empowered the town "to draft, adopt and amend a charter" which could supersede all special acts, and to substitute an ordinance for a special act, "with or without changes not inconsistent with the constitution or the general statutes." General Statutes § 7-188; see *Sloane* v. *Waterbury,* 150 Conn. 24, 26. It did not authorize the repeal or nullification of a general statute by charter provision. Local charter powers must yield to the superior power of the state when the two enter a field of statewide concern. *Larke* v. *Morrissey,* 155 Conn. 163, 174; *Wallingford* v. *Board of Education,* 152 Conn. 568, 574. Clearly enough, the determination by the state that an administrative or executive board shall have the power to hold an executive session preempts the field. It is General Statutes § 1-21 rather than the quoted provision of the Enfield charter which controls in the present controversy.

It is to be noted that § 1-21 does not apply to legislative bodies. As described above, the Enfield council is the legislative body of the town. In addition, however, it exercises, supervises, or controls every administrative or executive power vested in the town. When the council acts in a legislative capacity, § 1-21 would have no application. It would be unreasonable to hold, however, that the town could, by adopting charter provisions imposing countless administrative and executive powers and

duties on the council along with legislative power, thereby free the council from the operation of § 1-21 in its performance of its administrative and executive duties on the pretext that it is a legislative body. In exercising administrative or executive powers, the council is an administrative or executive body. *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 189; *Bartlett* v. *Rockville,* 150 Conn. 428, 429; see also *Wasicki* v. *Zoning Board,* 163 Conn. 166, 171. And when the council acts in an administrative or executive capacity § 1-21 applies.

We come then to the question whether the council, as an administrative or executive body, holds a meeting which shall be open to the public within the meaning of § 1-21 when it meets in a conference session. A special act creating a New Haven parking authority provided that "[n]o action of said authority shall be valid unless authorized by a vote of the majority of its members taken at a meeting open to the public." The court said: "[T]his language does not mean that the authority cannot meet in executive session from which the public is excluded to consider and discuss any matters incident to the performance of its duties . . . ." *Barnes* v. *New Haven,* 140 Conn. 8, 20. Webster's New International Dictionary (2d Ed.) defines a meeting as "[a] coming together; a gathering; an assembly." The definition of a meeting found in Black's Law Dictionary, "an assembling of a number of persons for the purpose of discussing and acting upon some matter or matters in which they have a common interest," is accepted in *American Brass Co.* v. *Ansonia Brass Workers' Union,* 140 Conn. 457, 462.

It is apparent from the procedure followed by the council that the members are formally called to meet in the conference or "work" sessions to consider a formal agenda devoted to matters incident

to the performance of one or more of their several duties. Notice of the meeting is given to the public, and the public is allowed to attend. After consideration, some matters are, by some means which is said not to be a formal vote, determined not to be a subject matter for airing at a regular or special meeting. Other matters are, by the same process, selected to be scheduled for vote at a subsequent meeting. The voting on the selected subjects at the regular or special meeting is frequently without further discussion. Discussion at the meeting becomes unnecessary because of the members' familiarity with the subject from the conference session. The conference or "work" session is thus a formal session at which the many matters incident to the performance of the council's several duties are discussed. Projects, plans, personnel problems and the like are considered, after which some of them receive further action at subsequent regular or special meetings. It is concluded that the conference or "work" sessions are meetings of the council and that when they are held to consider any subject except a legislative matter, they are governed by § 1-21.

Past operations have shown not only that conference or "work" sessions as well as regular or special meetings have generally been open to the public but also that the so-called "legal matters" appear, in reality, to have concerned subject matter which properly lent itself to consideration at an executive session. Finally, until the episode involving the plaintiff Hogan, the procedure followed had operated smoothly and without objection by the public.

Section 1-21 offers no guide or restriction as to when an executive session may properly be voted, and no issue in this case requires a decision as to

the extent of the discretion which the council may exercise under the statute. Clearly enough the "legal matters" discussed at the January 7 meeting were proper subjects for an executive session had one been voted. As the case is presented, it is impossible to determine under what procedure the council considered itself to be acting when it discussed the "legal matters" at the January 7 meeting. It was, however, convened in a formally called series of meetings to consider an agenda of administrative or executive matters. General Statutes § 1-21 therefore applied and the council could properly have voted an executive session, at which it could have considered the "legal matters" in the absence of the public. It did not take such action, however, and Hogan was correct in asserting his right to remain in attendance until such action was taken.

The plaintiff Hogan has standing as a member of the public to have invoked the mandate of § 1-21. Because of the stipulation of the parties, there is no need for a further discussion of standing, irreparable injury, adequacy of remedy, and appropriateness of relief, matters which are customarily involved in a case of this kind.

An injunction may issue directing the Enfield town council and the individual members thereof that, from and after the date hereof, all meetings of the Enfield town council called to consider any subject relating to the charter powers or duties of the council, except a subject requiring legislative action, shall, whether designated as a conference session, a work session, a regular meeting, a special meeting, or a sewer authority meeting, be open to the public when in session unless closed to the public for an executive session voted by a majority of the council members present and voting.

Enter a decree in favor of the town of Enfield and the defendant town manager, C. Samuel Kissinger.

No costs are awarded to any party.