749 F.2d 140
 117 L.R.R.M. (BNA) 3294, 102 Lab.Cas. P 11,290
 Imogene AMIRAULT and Ellison Skidmore, Plaintiffs-Appellees,
and
Communications Workers of America, AFL-CIO, and
International Brotherhood of Electrical Workers,
AFL-CIO, Plaintiffs-Intervenors,
v.
John W. SHAUGHNESSY, Jr., and Telecommunications
International Union, Inc., Defendants-Appellants,
and
American Federation of State, County and Municipal
Employees, AFL-CIO, Defendant-Intervenor-Appellant.
 No. 256, Docket 84-7623.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 27, 1984.
Decided Nov. 29, 1984.
 
 Julia Penny Clark, Washington, D.C. (Michael H. Gottesman, Bredoff & Kaiser, and Ronald Rosenberg, Washington, D.C., of counsel), for plaintiffs-appellees.
 Bertram Perkel, New York City (Michael B. Golden, Stephen Reese, and Hartman & Craven, New York City, of counsel), for defendants-appellants John W. Shaughnessy, Jr. and Telecommunications International Union, Inc.
 Craig Becker, Washington, D.C. (John C. Dempsey, Kirschner, Weinberg, Dempsey, Walters & Willig, Washington, D.C., of counsel), for defendant-intervenor-appellant American Federation of State, County and Municipal Employees, AFL-CIO.
 Before VAN GRAAFEILAND, WINTER and PRATT, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Appellants Shaughnessy, Telecommunications International Union ("TIU") and American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME") appeal from an order forbidding eleven of TIU's thirteen member unions from participating in a special convention and referendum to determine the future affiliation of TIU with AFL-CIO unions.
 
 
 2
 We reverse.
 
 BACKGROUND
 
 3
 This action involves the labor union counterpart to the now familiar corporate takeover struggles. TIU is a federation of thirteen member unions representing workers in the telephone and communications industry. Historically, the constituent locals of TIU have enjoyed and jealously guarded their considerable autonomy within TIU. TIU on its part has remained independent from the AFL-CIO federation. The present controversy arises out of the somewhat ambiguous relationships of the local unions with TIU, of the breakup of TIU's principal employer, AT & T, of TIU's attempts to affiliate with an AFL-CIO union, and of the attempts of various AFL-CIO unions to absorb TIU.
 
 
 4
 Before 1981, TIU exercised little direct authority over its constituent unions, although it formed a common national bargaining council to engage in collective bargaining with AT & T. Lack of affiliation with the AFL-CIO was a source of concern, however, and the 1979 TIU Convention authorized an application to join the AFL-CIO federation in order to secure the benefits of such affiliation, including the protection of the anti-raiding provisions of Article XX of the AFL-CIO Constitution. TIU's direct entry was blocked on this occasion because it was unable to secure the necessary consent of the AFL-CIO unions having concurrent telecommunications jurisdiction, the Communications Workers of America ("CWA") and the International Brotherhood of Electrical Workers ("IBEW").
 
 
 5
 In 1981, anticipating the breakup of AT & T and hoping to explore affiliation with an AFL-CIO union, the TIU annual convention revised its constitution and thereby sought to alter in fundamental ways its relationship with its autonomous locals. Much of the present controversy concerns the nature of the ratification procedures to be followed by local unions regarding the 1981 amendments and whether compliance with these procedures occurred. The pertinent constitutional amendments provided that: (1) local union constitutions would be rendered consistent with the TIU constitution; (2) TIU could merge or split locals without their consent (a provision anticipating AT & T divestiture); (3) a local could disaffiliate only by membership vote; (4) TIU would control the union name to appear on NLRB election ballots; and (5) TIU could merge or affiliate with other unions and bind its locals thereby. These amendments were approved by the annual convention of delegates, after a floor fight in which a move to give grandfathered autonomy status to the historic affiliates was rejected.
 
 
 6
 The TIU locals took a variety of actions regarding the 1981 amendments, thus creating room for argument as to which had ratified the amendments and which had not. However, until this lawsuit was brought, no one questioned the TIU membership status of the thirteen historic unions in question. Throughout the period, each union has routinely paid dues to TIU, participated in the election of TIU national officers and sent representatives to the TIU national bargaining committee.
 
 
 7
 After the 1981 convention, the TIU Executive Committee explored affiliation with various AFL-CIO unions. This Committee is composed of a President, Vice-President and Secretary-Treasurer (elected at an annual convention by delegates from all member unions in the international federation) and the Presidents of each of the member unions. As a consequence of these efforts, several unions considered acquiring TIU or some of its locals. In December, 1983, the Executive Committee voted to recommend acceptance of an affiliation proposal from AFSCME, an AFL-CIO affiliate, and TIU scheduled a special convention to take place on February 9 and 10, 1984, to consider and vote on the AFSCME proposal. If the special convention approved the AFSCME affiliation, the decision would then be submitted to a referendum vote of TIU's rank and file. The vote count was to be national and binding on local unions whether or not a majority of a local voted against the AFSCME proposal. The ballots were to be color-coded so each local would know how its members voted, however, and member unions would be free to withdraw from TIU.
 
 
 8
 On February 3, 1984, Amirault filed a complaint in the District of Connecticut seeking a temporary restraining order and preliminary injunction enjoining TIU from proceeding with the special convention or any referendum on affiliation. Amirault asserted jurisdiction under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1982) and Sec. 102 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. Sec. 412 (1982). A pendent state claim was subsequently added by oral motion. Her complaint alleged, inter alia, that many TIU unions, including Amirault's local, the Connecticut Union of Telephone Workers, Inc. ("CUTW"), had not formally adopted TIU's 1981 constitutional amendments and had thereby lost their affiliation with TIU. They were, therefore, not eligible to participate in a vote to affiliate TIU with AFSCME. The complaint also alleged that TIU had not adequately informed its members of the nature and consequences of the AFSCME affiliation or of a competing CWA affiliation proposal.
 
 
 9
 The district court held a hearing on an application for a temporary restraining order. At that hearing, it was disclosed that Amirault was a former officer of a CWA local and that her husband, currently the president of a CWA local, had secured counsel to represent her in the instant action. Since it had become clear that unions with interests other than the rights of individual TIU members were deeply involved in this litigation, Judge Cabranes suggested that AFSCME, CWA and IBEW formally intervene. CWA and IBEW did so as plaintiff-intervenors, AFSCME as a defendant-intervenor.
 
 
 10
 On February 8, 1984, the eve of the scheduled convention, Judge Cabranes issued a temporary restraining order, the details of which need not be recited here because the parties subsequently agreed to a consent order approved by the district court. The consent order provides for full disclosure of AFSCME, CWA and IBEW proposals to the TIU membership, and a ninety day consideration period before delegates are sent to the special convention. If that convention endorses an affiliation proposal by a 2/3 vote of delegates, a vote of the full membership (with ballots coded to identify the votes of each local) will be held thirty days thereafter. The endorsed proposal can be adopted by a national majority. If the national vote is favorable, any local that does not approve the proposal will be automatically disaffiliated from TIU. TIU, AFSCME, CWA and IBEW further agreed not to invoke the AFL-CIO Article XX anti-raiding provisions until after the referendum vote and not to challenge the subsequent AFL-CIO affiliation activity of any TIU local ousted by the vote, of any local found by the court not to be affiliated, or of any local that voluntarily disaffiliates before the referendum.
 
 
 11
 After entry of this order, the sole remaining issue before the district court was which, if any, locals would not be permitted to send delegates to the special convention and to vote in the referendum. Amirault's legal standing to pursue these claims as a TIU member was in doubt because she now contended that her own local, CUTW, was not a member of TIU. Her counsel, who also represents CWA, then contacted Skidmore, a member of one of the two locals conceded by all parties to be full members of TIU, and he was granted leave to intervene as a plaintiff to press the claim that the participation of eleven TIU locals diluted his vote.
 
 
 12
 After a hearing, the district court found that there was a "common understanding" at the 1981 TIU Convention that member unions had to vote thereafter to accept the proposed limitations on their autonomy or automatically lose their continued status as TIU locals. He held that such a "common understanding" was enforceable as a matter of contract under the LMRA and LMRDA and also "arguably" under state association law.
 
 
 13
 Reviewing the post-1981 actions of each member union, he concluded that: (i) one union did nothing at all; (ii) four adopted constitutional amendments which failed to subordinate them to TIU; (iii) the membership of six local unions approved constitutional amendments surrendering their autonomy to TIU, but that approval was invalid because the local leadership had misled the rank and file as to their impact; and (iv) only two unions, the United Telephone Workers of Delaware ("UTWD") and TIU/California ("TIU/Cal") took steps legally sufficient to retain full membership in TIU. He then enjoined the eleven locals described in (i)-(iii) from participating in any vote on TIU's affiliation on the grounds that TIU had become a two-local union in 1981.
 
 We reverse.DISCUSSION
 
 14
 We address Skidmore's federal claims first. We disagree with the conclusion that failure of a TIU local to take steps after the 1981 convention automatically severed all legal relationships between that local and TIU. At best the evidence indicated that the threat of losing affiliation with TIU was bandied about to encourage adoption of the 1981 amendments and that TIU intended at some point to exclude non-complying locals. While this evidence demonstrates that the locals were expected eventually to have to choose between adopting the 1981 amendments and disaffiliation with TIU, it does not follow that any of the locals lost their legal status as TIU members by 1984.
 
 
 15
 The record simply does not support the view that TIU's proposal of marriage carried with it as the sole alternative a suicide pact. There is no indication in the record whatsoever, for example, that, if all thirteen locals failed to ratify the 1981 amendments, TIU would consider itself thereby dissolved. Nor is there evidence of a fixed date by which ratification had to occur. Even when it was absolutely clear that at least some locals had not adopted the 1981 amendments, none of the thirteen locals or TIU conducted their affairs in a fashion even remotely suggesting that any of the eleven had severed their relationship with TIU.[1] Each continued to pay per capita dues, to send delegates to TIU conventions, to vote in TIU elections and to be represented on the TIU collective bargaining committee. Neither UTWD or TIU/Cal ever questioned the participation of the other locals. TIU thus continued to operate as it always had with regard to its internal governance and to collective bargaining with AT & T. We hesitate to embark on a path that logically leads to nullification of all actions by TIU officers elected by the thirteen unions. We conclude, therefore, that the "common understanding" in 1984 was that TIU remained a consensual federation of at least thirteen unions, however untidy its legal structure, and that all thirteen unions continued to retain a membership status of one form or another.
 
 
 16
 Because we believe the membership rights retained by the eleven locals are more than sufficient to allow them to participate in the special convention and membership vote without violating anyone's LMRDA rights, however, we need not define the legal relationships between the various locals and TIU with greater precision.
 
 
 17
 The guarantee of equal rights embodied in the LMRDA's section 411(a)(1)[2] is designed to ensure that unions employ basic democratic processes. It prohibits discrimination against members and classes of members in their right to vote, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), and protects against direct infringements of that right. See Navarro v. Gannon, 385 F.2d 512 (2d Cir.1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968). It does not, however, prohibit union political structures that may seem to intrude on theoretical rights but that do not in a practical way undermine the basic democratic nature of the union's political processes. A challenge to a union's political structure must be weighed from a practical viewpoint with due regard to the functions performed by unions as collective bargaining representatives, to the need for autonomy in selecting the most appropriate political structures, as well as to democratic theory and individual rights.
 
 
 18
 Enforcement of Skidmore's claim that his vote or that of his local union is "diluted" by allowing the procedure specified in the consent order to go forward redresses a wrong that is illusory and intrudes judicial preferences into the legitimate autonomy of the TIU. Under the consent order, affiliation of the TIU with any other union must be by majority vote of the entire membership. However, if a majority of members of any local vote against an affiliation chosen by the national majority, that local is automatically freed from that affiliation. If the membership of UTWD or TIU/Cal do not desire the proposed affiliation and prefer to go it alone together, therefore, they are absolutely free to do so. In contrast, acceptance of Skidmore's "dilution" claim allows one member of a local to assert a wholly theoretical right in which only the CWA has a serious stake and to prevent all other members and locals of TIU from using the democratic process provided by the consent order.
 
 
 19
 When pressed at oral argument, counsel for Skidmore and CWA refined their claim of prejudice to UTWD and TIU/Cal (not joined in by the locals themselves) by arguing that the convention's capacity to determine which proposal would be on the ballot infringed UTWD and TIU/Cal's rights. We reject that argument. We note, first, that UTWD or TIU/Cal are free to vote as a body against the ballot proposal. The consent order expressly enhances this opportunity by prohibiting TIU, AFSCME, CWA or IBEW from raising Article XX claims against any former TIU affiliates' subsequent merger activity. Second, there are good reasons for allowing the convention to go forward with maximum participation by TIU locals. The size of an independent federation may well affect the terms of the proposals for affiliation made by other unions. Legal rules that force fragmented negotiations upon independent unions such as TIU are justifiable only where serious infringement of democratic processes is likely.
 
 
 20
 Indeed, for all that appears in the record, CWA is the only party with an interest in limiting TIU's convention to two locals, and any supposed harm to TIU or its members flowing from a thirteen local convention is illusory. The illusory nature of the harm is evident in the fact that one TIU member, selected by CWA, is now preventing UTWD and TIU/Cal from even considering the option of joining the other TIU locals to accept affiliation with AFSCME or some other union. In the name of democracy, one individual is thus given a veto over all other members participating in an election which accords ample rights to local minorities. Section 411(a)(1) justifies no such result.
 
 
 21
 We have previously held that allegations similar to Skidmore's do not state a claim under the LMRDA. In Fritsch v. District Council No. 9, 493 F.2d 1061 (2d Cir.1974), the plaintiffs objected to the participation of autonomous locals in the election of their binding collective bargaining representative in circumstances in which the autonomous locals were free to choose their own representative after casting their vote. Noting that the plaintiffs alleged neither that they had been denied the right to vote nor "that the votes of some members count more than others," we declined to take on the task of enforcing a " 'one-man-one-vote' rule." Id. at 1063. In that spirit, we decline to invalidate the highly democratic procedures established in the consent order at the behest of a single member of TIU.
 
 
 22
 We turn now to Skidmore's pendent state claims and reach a similar result. Skidmore's allegations of infirmities arising out of the actions of various local unions following the 1981 convention offer no reason to prevent the processes established in the consent order from going forward. Indeed, an affirmative vote to affiliate would cure any defects or ambiguities arising out of the events of 1981 by authoritatively redefining TIU's and its locals' internal and external relationships. A union may consummate a valid affiliation by following its specified processes for amending its constitution.[3] American Brass Co. v. Ansonia Brass Workers Union, 140 Conn. 457, 101 A.2d 291 (1953). The procedures designated by the consent order which include a period of deliberation and a special convention followed by a membership vote with local option, are more than legally adequate to revamp TIU's constitutional arrangements under either its pre-1981 or post-1981 constitution. Since we believe it clear that the constituent locals that met in 1981 could again convene and validly adopt new amendments, subject to a membership vote, curing whatever ambiguities in legal structure exist, we perceive no barrier in Connecticut law to the democratic and potentially curative convention and referendum in question.
 
 
 23
 Reversed.
 
 
 
 [1]
 Appellant Amirault's original complaint objected to the participation of the Pennsylvania Telephone Guild ("PTG") and the United Telephone Workers ("UTW"). Since the pre-trial stipulation abandoned the claim that PTG was a TIU local, only the question of UTW affiliation remains. The pre-trial stipulation suggested that UTW might have withdrawn from TIU by ceasing attendance at TIU meetings in late 1983 or early 1984, although it had been paying dues and participating in TIU up until that time. The district court's decision only notes that UTW has not formally acted to affiliate itself with TIU. Without deciding the question, we note that nothing in this opinion compels or requires UTW participation in the special convention. Should it elect to send delegates, the TIU Credentials Committee is the proper body to determine the eligibility of any delegates under the governing court orders
 
 
 [2]
 Section 411(a)(1) reads:
 Equal rights.--Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 [3]
 The processes established by the consent order afford more protection to minority locals than does either TIU's pre-1981 or its post-1981 provision for amending its constitution. We believe, therefore, that the consent order processes are more than legally adequate for such a vote