RICHARD H. BRIGHT ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD ET AL.

HENRY B. MACQUARRIE ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 6—decided July 27, 1962

*Albert A. Garofalo,* for the appellants (defendants Pequot Country Club and Albert A. Garofalo).

*Paul C. Shafer, Jr.,* with whom, on the brief, was *W. Bradley Morehouse,* for the appellees (plaintiffs); with him, on the brief, was *Pierce J. Gerety,* for the appellees (plaintiffs) in the first case.

ALCORN, J. The defendant Pequot Country Club of Southport is the alter ego of the defendant Albert A. Garofalo, who appears both individually and as attorney for the club in these appeals, which have been joined. Practice Book § 382. Because of the identity of interest, we shall refer to the two defendants as the defendant.

On an undisclosed date, Garofalo purchased an elongated twelve-acre strip of land in Fairfield, bounded on one side for about 1200 feet by the Connecticut turnpike and on the opposite side for an equal distance by the right-of-way and tracks of the New York, New Haven and Hartford Railroad. On the narrower sides, the property is bounded at one end, the southwesterly end, for about 200 feet by Sasco Creek and at the other end by Westway Road, a public highway. The property is in a residence A zone. All of the land in the general area is zoned for residence, that on the far side of the Connecticut turnpike and on the far side of Westway Road being residence A, and that on the far side of the railroad being residence R 3. The fourth or Sasco Creek side is on the Westport town line. Leading off Westway Road to the northeast is a U-shaped road known as Westford Drive, along which residences valued at $16,000 to $18,000 each have been built. Three single-family dwellings are situated, along with the defendant's property, on the southwest side of Westway Road. Some of the plaintiffs reside on Westford Drive and others on the defendant's side of Westway Road.

There are at least twenty-three homes within 600 feet of the Westway Road end of the defendant's land. On the defendant's land, there is a twelve-room house with three bathrooms. Westway Road has a paved surface about thirty feet wide. Because of the irregularity of the boundary at that end, the defendant's property fronts approximately 121 feet on Westway Road, although it is about 350 feet wide at its greatest width at that end.

The conditions described existed when Garofalo bought the property. When or how the Pequot Country Club subsequently acquired an interest in it does not appear. In any event, an application was made in the name of "Pequot Country Club of Southport (Albert A. Garofalo, Atty)" on October 18, 1960, to vary the application of the zoning regulations to permit the use of the defendant's premises for "a club house, golf course . . . and other recreational facilities," on the ground that the "[h]ouse is too large for the zone, and the rest of the land is unsuitable for residential purposes because it lies between the Turnpike and the Railroad." The zoning board of appeals held a hearing on the application and, on November 3, 1960, denied it "without prejudice." Thereafter, on December 19, 1960, another application was made in the same names, seeking a variance to permit "[u]se of premises for a club house and swimming pool. Also a golf course." The same reason for the variance was given as in the previous application. The Fairfield zoning regulations permit, in a residence zone, "the buildings of membership clubs, and social and recreational buildings . . . except those a chief activity of which is one customarily carried on as a gainful business." Fairfield Zoning Regs. § 3, Div. 1 (4) (1960). The zoning board of appeals held a hear-

ing on the second application. At the hearing, the defendant indicated an intention to remodel the twelve-room dwelling on the premises into a clubhouse and to construct a nine-hole, "par three" golf course on about five to seven acres of the property and a swimming pool adjacent to the proposed clubhouse. The facilities were to be open to the public. A golf fee of $2.50 would be charged, and, for parking vehicles, there would be an area 120 to 130 feet wide, extending across the Westway Road end of the property. The golf course would be floodlighted from approximately twenty-seven light poles, each about thirty feet high; nine of the poles would carry three floodlights each and eighteen would carry two floodlights each.

There was substantial opposition from property owners and civic associations at the hearing on each application. After the second hearing, the board of appeals granted the application for a variance on condition that lighting would be directed away from the residences and the highway, that off-street parking for a minimum of 100 cars would be provided and that no overnight guests would be allowed in the clubhouse. The ground stated by the board for granting the application was that "[h]ardship was found by the Board in that the land is unsuitable for residential purposes." It is from this decision that the present appeals are taken.

The court heard the appeals on the record before the zoning board of appeals, and it visited the area with counsel for the parties. It concluded that the plaintiffs, two of whom live 150 feet from the defendant's premises and three others of whom live from 400 to 650 feet away, are aggrieved. It also concluded that the defendant had offered no evi-

dence of any change in conditions between the date of the board's action on the first application and the hearing on the second and that the evidence submitted at the two hearings varied only by reason of the more elaborate preparation and presentation at the second hearing. The court sustained the appeals on the following grounds: (1) that the board acted illegally, arbitrarily, and in abuse of its discretion in that it dealt with a question within the scope of its earlier decision without finding any intervening change in conditions; (2) that the ground given for its action was without support, because the hardship of which the defendant complained was purely financial, and the conditions claimed to affect the defendant's property were not peculiar to it; (3) that the conditions existed when the defendant acquired the property; and (4) that to use the property for a business within a residential area would reduce the value of surrounding properties, create traffic hazards and endanger the public safety and hence would not be in harmony with the general purpose and intent of the zoning regulations.

In its appeal to us, the defendant claims only that the court erred in deciding that the board of appeals acted illegally, arbitrarily and in abuse of its discretion. In its brief, however, the defendant argues that the plaintiffs are not aggrieved persons entitled to appeal within the meaning of § 8-8 of the General Statutes. Although the assignment of errors does not raise this claim, it was an issue at the trial and was decided by the court. Consequently we consider it. Practice Book § 409; *Jeschor* v. *Guilford*, 143 Conn. 152, 156, 120 A.2d 419. The claim is without merit. The court's understanding of the stenographic record of the testimony, and of the maps, photographs and plans of the proposed

operation which were offered before the board, was facilitated and confirmed by a visit to the locus. See *G. F. Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 218, 146 A. 20. Two of the plaintiffs live 150 feet away and one house removed from the ambitious project which the defendant contemplates. Three others are 400, 500 and 650 feet away respectively. All are neighbors in the same zone. They were aggrieved persons within the meaning of the statute if the board's decision affected them directly or in relation to a specific, personal interest, as distinguished from a general interest, in the subject matter. *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 662, 145 A.2d 832; *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 468, 94 A.2d 789. The question of aggrievement was for the trial court to decide. *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 667, 154 A.2d 520. The court made no special finding of aggrievement as it should have. The record before the board in this case was, however, sufficient to establish the issue, and we have decided to overlook the lack of a finding. On the record presented, the court's decision on the matter cannot be disturbed.

Just what the board meant by its denial of the defendant's first application "without prejudice" does not appear. We have said that such an order should not be made, even by a court, except in situations where there is some reasonable ground for a conclusion that the issues should not be finally decided on the existing situation; otherwise, the tribunal would have the power of postponing the ultimate determination indefinitely. *Varanelli* v. *Luddy,* 130 Conn. 74, 80, 32 A.2d 61. We have discountenanced the practice by zoning authorities. *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148

Conn. 172, 176, 169 A.2d 268. The board of appeals assigned no reason for denying the original application "without prejudice" nor does the record disclose a valid reason for that action. The plaintiffs did not, as they might have done, assign the board's lack of power to deny the first application "without prejudice" as a ground of appeal. *Varanelli* v. *Luddy,* supra, 81. However that may be, we have adhered firmly to the principle that a zoning board of appeals should not be permitted to revoke its former action unless there has been a change in conditions or new considerations materially affecting the merits of the subject matter have intervened. *Fiorilla* v. *Zoning Board of Appeals,* 144 Conn. 275, 279, 129 A.2d 619, and cases cited. The present case is an apt illustration of the reason for discouraging such a practice, since it would permit interested parties, as in this case, to "be unduly harassed and injured through being called upon to contest repeated and frequently recurring agitations pertaining to the same subject matter." *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 711, 68 A.2d 123.

An examination of the record before the board amply supports the court's conclusion that the second hearing did no more than develop, more elaborately, evidence which was offered or could have been offered at the first hearing. The defendant made no claim of a change in conditions between the two hearings, and the board, as a result of the second hearing, did no more than to review and reverse its former action. Since the record did not disclose either that there had been a change in conditions, or that other considerations materially affecting the merits of the subject matter had intervened and no vested rights had arisen, the board

was "impotent to reverse itself." *Sipperley* v. *Board of Appeals on Zoning,* 140 Conn. 164, 167, 98 A.2d 907.

Although this appeal is disposed of by the foregoing discussion, we may add that the ground of "hardship," on which the board based its decision, is without support in the evidence. The defendant purchased the property under the conditions and the restrictions now complained of. Furthermore, the motive for seeking a variance was a greater financial return, and any claimed unsuitability of the land for residence purposes did not attach any more particularly to the defendant's land than to the zoning district in general. The court correctly concluded that no hardship was established. General Statutes § 8-6 (3); *Talmadge* v. *Board of Zoning Appeals,* 141 Conn. 639, 643, 109 A.2d 253; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 542, 45 A.2d 828.

There is no error.

In this opinion the other judges concurred.