[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Glenn Stavens, (plaintiff), appeals the decision of the Coventry Zoning Board of Appeals (the Board) granting Michael S. Block's (Applicant) application for a special exception.[1] In his complaint, plaintiff claims he is an abutting property owner who is aggrieved by the granting of the Applicant's special exception. The plaintiff alleges that the Board acted arbitrarily, illegally and in abuse of its discretion when it granted the special exception because it: (1) did not require a showing of undue hardship or a showing that the comprehensive zoning plan would not be substantially affected; (2) granted an application that it previously denied; (3) granted an application when technical requirements of the zoning regulations were not met. The parties have filed briefs, and argument was heard by the court on October 21, 1994. The court finds that plaintiff did not sustain his burden of proof in showing that the Board acted arbitrarily, illegally and in abuse of its discretion. Accordingly, the plaintiff's appeal is dismissed.
PROCEDURAL HISTORY
On May 24, 1993, the Board granted the Applicant's special exception permit for the subject property. Plaintiff properly served the defendant. The plaintiff timely filed an appeal on the Board's decision with the clerk of the superior court on June 8, 1993. See General Statutes § 8-8(a). On September 27, 1993, the defendant filed an answer and return of the record. On September 30, 1993, the plaintiff filed an appeal bond and on October 26, 1993, filed his brief. On November 18, 1993, the court (Shaughnessy, J.), after a hearing, granted the defendant's oral request for extension of time to file its response brief. (Order 11/18/93). On December 10, 1993, the defendant filed its response brief. On January 27, 1994, pursuant to General Statutes § 4-183(h), plaintiff requested leave to present additional evidence, which the court (Sterrazza, J.) denied on March 14, 1994. The appeal was heard by the court (Kaplan, J.) on October 21, 1994. At the hearing, which was attended by the plaintiff, CT Page 11159 the plaintiff's counsel, and the defendant's counsel, it was noted that Attorney Vinkels, who represents the Applicant, was aware of the hearing and I waived his right to appear.
FACTS
This appeal involves 25,000 square feet of property known as Assessor's Map I, Block K, Lots 13, 14, 15, 16, 37, 38, 39 40, located in a "LZ-40" zone (subject property). (ROR, Exhibit 1(a)). Under Coventry's Zoning Regulations (Regulations), a "LZ-40" zone is designated as a lake zone and requires 40,000 square feet as a condition precedent to building a single family home. (Coventry Zoning Regulations (the "Regulations") §§ 2.2.3 and 10.5) In accordance with the Regulations, however, an individual can file an application for a special exception, which if granted, allows the applicant to build on LZ-40 property despite its nonconforming square footage. (See Regulation § 2.2.1(c)). On April 1, 1993, the Applicant applied to the Board for a special exception for the subject property. (ROR, Exhibit 1(a)). The Applicant pursued this application on behalf of the current owners of the lots, i.e., Daniel and Zola Paradisi; Douglas Quagliaroli; and Kevin Leonard, executor for the estate of John H. Shea (ROR, Exhibit 1(a). On May 24, 1993, following public hearings, the Board granted the Applicant's special exception application. (Complaint, par. 2; Answer, par. 1). On June 8, 1993, the plaintiff filed a complaint alleging that as the owner of property that abuts the subject property, he is aggrieved by the Board's decision. (Complaint, par. 3, 4). On October 26, 1993, the plaintiff filed a brief arguing that the Board acted arbitrarily, illegally and in abuse of its discretion in that:
(1) "[It] entertained multiple applications and held numerous hearings on the same subject matter despite there having been no intervening changes in circumstances materially affecting the merits of the application;
(2) [It] approved the application on the fourth submission, after three prior denials, despite the fact that the proposed variance has a substantial negative impact on the comprehensive zoning plan laid down by the Coventry Planning Zoning Commission;
(3) [It] approved the application on the fourth submission despite having made no finding of unusual and unnecessary CT Page 11160 hardship to the applicant or landowner;
(4) [It] approved the application in spite of the fact that hardship cannot be shown in this case as it is currently interpreted under the law; and
(5) [it] approved the application, in spite of the fact that, in any case, the applicant has failed to comply with all of the special zoning regulation governing the development of nonconforming lots."[2]
On September 27, 1993, the defendant filed an answer to the plaintiff's complaint and on December 10, 1993, it submitted a brief.
AGGRIEVEMENT
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions that created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). While the court is unaware of any jurisdictional or procedural deficiencies regarding the within matter, it briefly addresses the issue of aggrievement since it involves subject matter jurisdiction.
Aggrievement is a jurisdictional question and is a prerequisite to maintaining an appeal. Winchester WoodsAssociates v. Planning and Zoning Commission, 219 Conn. 303, 307,592 A.2d 953 (1993); DiBonaventura v. Zoning Board of Appeals,24 Conn. App., 369, 373, 588 A.2d 244 (1991). "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specifically and injuriously affected as to property or other legal rights." Smith v. Planning and Zoning Board,203 Conn. 317, 321, 524 A.2d 1128 (1987). In the present case, the plaintiff testified before the court, on October 21, 1994, that he owned property known as 22 Beechwood Trial and that this land abuts the subject property. Anyone whose land abuts or is within a radius of one hundred feet of the land involved in any decision of a zoning commission, planning commission, planning and zoning commission or zoning board of appeals is statutorily aggrieved and need not prove aggrievement. Smith v. Planning ZoningCT Page 11161Board, supra, 203 Conn. 321; see also General Statutes §8-8(a). Since the trial court accepts the plaintiff's testimony that he owns land that abuts the subject property, the plaintiff is statutorily aggrieved and has standing to bring this appeal.
STANDARD OF REVIEW
When a decision of a zoning board of appeals is challenged, the burden of proving the local authority acted improperly is on the plaintiff. Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991); Aldophson v. Zoning Board of Appeals,189 Conn. 261, 266 (1983). A court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer but on the decision of the board and the record before the board. Caserta v. Zoning Board of Appeals,226 Conn. 80, 82, 626 A.2d 744 (1993). The court may grant relief on appeal only where the local authority has acted illegally, arbitrarily, or in abuse of its discretion. Smith v. Zoning Boardof Appeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993); Frito-LayInc. v. Planning and Zoning Commission, supra, 573. Thus, the question on appeal is simply whether the record reasonably supports the conclusions reached by the agency, and the court cannot substitute its judgment as to the weight of the evidence for that of the agency. Goldberg v. Zoning Commission, 173 Conn. 23,27, 376 A.2d 385 (1977) (site plan); Housatonic Terminal Corpv. Planning Zoning Board, 168 Conn. 304, 306, 362 A.2d 1375
(1975) (special permit).
DISCUSSION
In his brief, the plaintiff characterizes the Board's actions as "the granting of a variance." Accordingly, he argues that the Board's decision should be overturned because (1) the variance substantially affects the comprehensive zoning plan and (2) the Board did not make a finding that the Applicant would suffer an undue hardship if the variance application was denied.
"`A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations.'" (Citation omitted.) Kaeser v. Zoning Board of Appeals, 218 Conn. 438,445, 589 A.2d 1229 (1991). The subject case involves Regulation § 14.1.2, which provides, in pertinent part, that:
 The construction of a permitted building or structure, or the establishment of a permitted use, on a non-conforming lot or CT Page 11162 parcel may be allowed by the Zoning Board of Appeals as a Special Exception in accordance with Section 4 of these Regulations and subject to further to the requirements set forth in this Section 14.1.2 . . . .
A reading of this regulation makes it clear that the Regulations do not forbid development on non-conforming lots. Instead, it merely requires that the applicant satisfy certain conditions before development can occur. A special exception allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. A.P. W. HoldingCorp. v. Planning and Zoning Commission, 167 Conn. 182, 185,355 A.2d 91 (1974), Whisper Wind Development Corp. v. Planning andZoning Commission, supra, 32 Conn. App. 520. Accordingly, this appeal does not involve a variance but a special exception, which requires neither a showing that the granting of the application will not substantially affect the comprehensive zoning plan nor a finding of undue hardship. See Housatonic Terminal Corp. v.Planning and Zoning Board, supra, 168 Conn. 307; A.P. W.Holding Corp. v. Planning and Zoning Commission, supra, 167 Conn. 185.
In order to successfully apply for a special exception, the proposed use must satisfy the standards set forth in the regulations and any conditions necessary to protect the public health, safety convenience and property values. HousatonicTerminal Corp. v. Planning and Zoning Board, supra, 168 Conn. 307,A.P. W. Holding Corp. v. Planning and Zoning Commission, supra, 167 Conn. 185. When ruling upon a special exception, a zoning authority acts in an administrative capacity, and its function is simply to determine whether the proposed use is expressly permitted and whether the standards set forth in the regulations and General Statutes § 8-2 are satisfied. DoubleI Limited Partnership v. Planning and Zoning Commission,218 Conn. 65, 72, 588 A.2d 624 (1991); Housatonic Terminal Corp. v.Planning and Zoning Commission, supra, 168 Conn. 307. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Double I Limited Partnershipv. Planning and Zoning Commission, supra, 218 Conn. 72.
In his brief, the plaintiff argues that the requirements of Regulations § 4.2.C.1, § 14.6.2, and § 14.6.9 were not met and, therefore, the defendant acted arbitrarily, CT Page 11163 illegally and in abuse of its discretion when it granted the special exception.
In terms of the plaintiff's argument that the requirements of § 4.2.C.1 were not met, the court notes that Regulation § 4.2.C.1 pertains to the Sanitary Waste Disposal Plan and requires an applicant to submit a sanitary waste disposal plan, which must contain certain data. Specifically, subsection § 4.2.C.1 requires, in pertinent part:
 A Report of the Soil Test Data signed by the Town Sanitarian or his representative which shall be in conformance with Section 19-13B2OJ (classification of soil) of the Public Heath [Health] Code, as the same may be amended from time to time. All percolation tests and observation test pits for groundwater and ledge shall be dug and, test performed, in accordance with the Technical Standards of the Connecticut Public Health Code, as the same may be amended from time to time, and shall be supervised and certified by the Town Sanitarian or his designee, who shall provide to the applicant, for inclusion with his Special Permit/Exception Application, a verified approval of the application for the subsurface disposal in accordance with the Connecticut Public Health Code, as the same may be amended from time to time. A least one (1) observation test pit for groundwater and ledge shall be dug in the designated location for each and every primary and reserve leaching field. . .
In his brief, plaintiff argues that he will demonstrate, "at trial", the various inadequacies of the testing performed pursuant to this Regulation. The court, however, notes that its review is limited to evidence contained in the record. See General Statutes § 8-8(k), Lathrop v. Planning ZoningCommission, 164 Conn. 215, 220, 319 A.2d 376 (1973). Moreover, "on factual issues material to the reasons for the commission's decision, the credibility of witnesses is within the province of the Commission. So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after full hearing, courts should be cautious about disturbing the commission decision." (Internal citations omitted.) Whisper WindDevelopment Corp. v. Planning and Zoning Commission, supra,32 Conn. App. 523.
A review of the record reveals that on April 20, 1993, Robert Miller, the Town Sanitarian (Sanitarian), sent a letter to the CT Page 11164 Board, stating that he found "the [the defendant's] plan to be in compliance with the Connecticut Public Health Code and the Coventry Zoning Regulations addressing on-site subsurface sewage disposal." (ROR, Exhibit 11). In addition, the Sanitarian sent a letter on May 12, 1993, summarizing his opinion that the leaching field tests that were performed on the site conformed with the Connecticut State Department of Health Code, that deep test hole test pits were dug in the area of the leaching field, that no further testing was necessary, and that results of the hydraulic analysis relative to this property were satisfactory. (ROR, Exhibit 14). Therefore, the court finds that based on the evidence in the record, the Board could reasonably assume that the tests were done properly. Accordingly, the Board acted properly in determining that the requirements set forth under Regulation § 4.2.C.1 were met.
The plaintiff further argues that the Applicant failed to comply with Regulation § 14.6.2.b, and that the Board acted beyond its discretion in granting the special exception despite this noncompliance. Regulation § 14.6.2.b provides:
 A determination of the hydraulic capacity of the lot shall be required in any of the following conditions: . . . where testing on the lot show that it is an area of special concern, as defined by the public health code; where the adjacent lots of the abutting properties have conditions that affect the buildable area.
At the May 18, 1993 public hearing, a letter from Busch Engineering to Diane Blackman, Coventry Town Planner, was read into the record (see Return of Record, Exhibit 7). The letter stated that:
 A hydraulic analysis for the proposed system was prepared copy attached. The analysis indicated that the designed system has approximately 20 percent excess capacity. It is my opinion, as a professional engineer, licensed in the State of Connecticut, that this proposed design will not detrimentally affect either the groundwaters or surface waters of the Town of Coventry or the State of Connecticut and should have no discernible affect on the adjacent property owners. Therefore, not withstanding any other reasons, I urge you to approve this lot for single-family development.
Based on this evidence, the court finds that the record CT Page 11165 reasonably supports the Board's conclusions that the requirements of Regulation § 14.6.2.b were met. Accordingly, the court rejects the plaintiff's argument that the Board abused its discretion in granting a special exception despite non-compliance with Regulation § 14.6.2.b.
The plaintiff also argues that the defendant abused its discretion when it granted a special exception application in which the requirements of Regulation § 14.6.9 were not met. Regulation § 14.6.9 provides that:
 where lots have been combined to increase the size of a non conforming lot, the applicant shall provide documentation that no other lots could be combined in order to increase the conformity of the non-conforming lot as presented to the Board.
As the return of record reveals (ROR, Exhibit 16, Exhibit 16a), the Applicant submitted letters to the Board stating that it was not possible for him to obtain any more lots to combine with the subject property. The plaintiff argues that the Applicant letter is inadequate documentation to satisfy the statute. The regulations do not define "documentation", therefore, where particular words in a zoning regulation are not defined, the words used are to be interpreted in accordance with their natural, ordinary, and usual meaning. Schwartz v. Planning Zoning Commission, 208 Conn. 146, 153, 543 A.2d 1339 (1988). Although the regulations should not be extended by implication to include more than is within their expressed terms; id. 153; common sense must be used in construing the regulation, and the court assumes that a rational and reasonable result was intended by the local legislative body. Spero v. Zoning Board of Appeals, supra, 217 Conn. 441.
The word "documentation" has been defined as "the act of or authenticating with documents." Webster's Ninth New CollegiateDictionary (1989). Documents, in turn, have been defined as "a writing conveying information." Id. Thus, it appears that under this common sense definition, the Applicant's letter was sufficient documentation to satisfy § 14.6.9. Accordingly, the Board did not act arbitrarily or in abuse of its' discretion by accepting the Applicant's letters as "documentation."
Plaintiff's attorney argued that, pursuant to Regulation § 14.6.9, the Applicant must use his best efforts to purchase CT Page 11166 additional land to increase the lot size. The Regulations do not impose that burden on an applicant. Plaintiff's attorney has failed to cite any case law in support of this claim. This court finds that no such duty exists.
Lastly, the plaintiff argues that the Board acted arbitrarily, illegally and in abuse of discretion in that it "entertained multiple applications and held numerous hearings on the same subject matter despite there having been no intervening changes in circumstances materially affecting the application." Defendant argues that an intervening material change did occur, i.e., the Applicant acquired an additional 6,250 square feet than he previously possessed when he filed applications and performed more extensive testing than he had in the past. This represents a thirty-five percent increase in square footage.
Generally, an administrative agency cannot reverse a previous decision unless there has been a change in conditions or other circumstances have arisen which materially affect the merits of the matter decided. Grillo v. Zoning Board of Appeals, 206 Conn. 362,367, 537 A.2d 1030 (1988); Bright v. Zoning Board ofAppeals, 149 Conn. 698, 183 A.2d 603 (1962). It is for the zoning authority, not the court, to determine whether the new application is substantially the same as the earlier application.Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 54,585 A.2d 703 (1991). The court is limited to determining whether the board's findings of material change or lack thereof is supported by the record. Id. A review of the record reveals that at the public hearing, testimony was provided that there was an increase of 6,250 square feet over what the Applicant had possessed when he had previously filed a special exception application. The court finds that the evidence of an additional 6,250 square feet reasonably supports the Board's conclusion that there was a material change in circumstances, thus allowing the Board to consider the new application.
In summary, the court finds that the record supports a finding that the Board acted within its' authority in determining that the application was in compliance with the Regulations and in granting the special exception.
The plaintiff's appeal is dismissed.
Kaplan, J. CT Page 11167