[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON STATE TRAFFIC COMMISSION'S MOTION TO DISMISS
The State Traffic Commission ("Commission") has moved to dismiss the above-captioned action on the ground that the plaintiffs lack standing to pursue an appeal from its granting of a traffic application and that this court is therefore without jurisdiction. Long Wharf Galleria, LLC, which is also named as a defendant, filed a separate motion to dismiss on August 31, 2000; however, that motion is not before this court at this time.
In their action, which they have titled "Complaint, Petition and Administrative Appeal, " some of the plaintiffs allege they are New Haven residents who drive, ride bicycles, commute, fish and live in neighborhoods that may be affected by development of the site selected by defendant Long Wharf Galleria, LLC ("Long Wharf") for the development of a large shopping mall, and some of the plaintiffs allege they are residents of Branford and Orange who commute to work and other destinations on Interstate Routes 91 and 95 and state highway 34. CT Page 11627
The plaintiffs seek review of the actions of the Commission in denying them intervenor status in administrative proceedings in which the Commission issued a certificate of operation to Long Wharf. They also appeal from the Commission's issuance of the traffic certificate. In addition, the plaintiffs seek unspecified injunctive relief.
In its motion, the Commission has characterized the plaintiffs' action as an administrative appeal. Because of the title and because many of the allegations included in the forty-four pages of the "Complaint, Petition and Administrative Appeal" appear to be factual allegations in support of the plaintiffs' claim for injunctive relief, the court questioned plaintiffs' counsel at oral argument concerning the apparent intention of the plaintiffs to combine an administrative appeal with a civil action for injunctive relief. Plaintiffs' counsel resisted the court's characterization of the complaint as wholly and exclusively an administrative appeal but did not take the position that the pleading was solely a complaint in a civil action and did not object to the court's deciding the motion to dismiss those portions of the complaint that appeal from the Commission's denial of intervention and the granting of Long Wharfs application for a traffic certificate.
The Commission has not filed an motion addressed to the propriety of the plaintiffs' apparent combining of an administrative appeal with a civil action for injunctive relief. The motion to dismiss is addressed only to the administrative appeal. The court will therefore not decide in this decision whether the plaintiff has validly commenced a civil action as well as an administrative appeal in the pleading that is before this court only on the Commission's motion to dismiss the appeal from its issuance of a certificate of operation.
 Standard of review
The standard for review of a motion to dismiss on grounds of lack jurisdiction is well established. The motion must be granted if, even when viewed in the light most favorable to the plaintiff, the allegations of the complaint fail to state a claim within the court's subject matter jurisdiction. Lawrence Brunoli, Inc. v. Town of Branford, 247 Conn. 407,410-411 (1999); Savage v. Aronson, 214 Conn. 256, 264 (1990).
"In ruling on a motion to dismiss a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Villager Pond, Inc. v. Town of Darien, 54 Conn. App. 178, 183
(1999). CT Page 11628
It is also well established that there is no right of appeal from a decision of an administrative agency except as created by statute: "It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. Inland Wetlands Commission,221 Conn. 46, 50 (1992); Chestnut Realty, Inc. v. Commission on HumanRights and Opportunities, 201 Conn. 350, 356 (1986). Failure to comply with statutory conditions and requirements deprives the court of subject matter jurisdiction. Rogers v. Commission on Human Rights andOpportunities, 195 Conn. 543, 552 (1985); Farricielli v. Personnel AppealBoard, 186 Conn. 198, 201 (1982).
The Supreme Court has held that "[t]he legislature intended the forty-five day time limitation for filing of an appeal under the [Uniform Administrative Procedures Act, Conn. Gen. Stats. § 4-166, et seq.] to remain a prerequisite to subject matter jurisdiction." GlastonburyVolunteer Ambulance Assn., Inc. v. Freedom of Information Commission,227 Conn. 848, 854 (1993).
 Timeliness of Appeal
The Commission asserts that the court lacks jurisdiction because the plaintiffs' appeal is untimely. Specifically, the Commission raises the fact that the plaintiffs filed their appeal in the clerk's office of the Superior Court for the Judicial District of New Haven more than forty-five days after the denial of their motion to intervene. Conn. Gen. Stat. § 14-311 (e) provides that "[a]ny person aggrieved by any decision of the State Traffic Commission hereunder may appeal therefrom in accordance with the provisions of section 4-183 . . .
Connecticut General Statutes § 4-183 (c), which applies to decisions by the Commission; Nizzardo v. State Traffic Commission,55 Conn. App. 679, 682, cert. granted, 252 Conn. 943 (2000); provides that within forty-five days after mailing of the final decision, a party seeking to appeal that decision "shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the Attorney General in Hartford and file the appeal with the clerk of the superior court . . ." The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the court of jurisdiction. Crest Pontiac Cadillac,Inc. v. Hadley, 239 Conn. 437 (1996); Casella v. Dept. of LiquorControl, 30 Conn. App. 738, cert. denied, 226 Conn. 909 (1993).
The Commission, by letter, denied the plaintiffs' motion to intervene on September 20, 1999. The forty-fifth day thereafter was November 4, 1999. On November 4, 1999, the plaintiffs served their "Complaint, CT Page 11629 Petition and Administrative Appeal" on Jane S. Scholl, who is identified in the sheriff's return as "Associate Attorney General for the State of Connecticut, whom (sic) is duly authorized to accept service on behalf of the within named defendant: State Traffic Commission." The plaintiffs did not, however, file their appeal with the clerk of the Superior Court until November 10, 1999, the fifty-first day after the denial of the petition to intervene.
The Commission approved Long Wharfs application for a certificate on September 27, 1999. The plaintiffs' appeal was both served and filed within forty-five days of this approval.
The Appellate Court has ruled, in a case now before the Connecticut Supreme Court, that a party who can make a colorable claim to intervention as a matter of right and who is denied intervenor status in an administrative proceeding cannot await the outcome of an agency's action but must appeal from the denial of intervention within forty-five days of that denial. Nizzardo v. State Traffic Commission, supra,55 Conn. App. 685. The plaintiff in Nizzardo filed his appeal within forty-five days of the Commission's final decision in the proceeding in which he had sought to intervene, but not within forty-five days of the denial of intervention. The Appellate Court ruled that his appeal was properly dismissed as untimely. The would-be intervenor in Nizzardo, like the plaintiffs in the instant action, sought intervention pursuant to Conn. Gen. Stat. § 22a-19. As the Appellate Court noted in NizzardoState Traffic Commission, supra, 55 Conn. App. 685, the Connecticut Supreme Court has ruled in Winslow v. Lewis-Shepard, Inc., 216 Conn. 533,536 (1990), that denial of intervention is a final judgment for purposes of appeal where intervention is sought in a court proceeding rather than in an administrative proceeding.
The ruling of the Appellate Court in Nizzardo concerns precisely the same issue that is presented to this court, regarding an appeal from precisely the same administrative body. Even the source of the claimed right to intervene, the EPA, is the same in the two cases. The Appellate Court determined that a party seeking to intervene in an administrative proceedings pursuant to § 22a-219, who is denied intervention must appeal that denial within forty-five days of that denial, not within forty-five days of the agency's ruling on the merits of the application. A trial court must follow the holdings of the appellate court that decide the same issue. See Branch v. Occhionero, 239 Conn. 199 202 n. 4 (1996) (trial court should follow appellate court precedent, as it is the appellate courts' prerogative, not the trial court's, to change the law);Bolan v. Avalon Farms Property Owners Association, Inc., 250 Conn. 135,137 (1999); Ozyck v. D'Atri, 206 Conn. 473, 482 (1988) (Healy, J., concurring); Burger Burger, Inc. v. Murren, 202 Conn. 660, 662 (1987). CT Page 11630
The plaintiffs have urged this court not to follow the holding inNizzardo but to adopt the approach of federal courts that have ruled that a party who is denied intervention has the option of appealing either after that denial or after the agency's ultimate ruling. The controlling precedent of Nizzardo v. State Traffic Commission, supra, 55 Conn. App. 679, however, compels this court to find that the plaintiffs' administrative appeal from denial of their application to intervene in the Commission's proceedings was untimely, and this court therefore lacks subject matter jurisdiction to hear its administrative appeal.
 Standing Based on Classical Aggrievement
As in Nizzardo v. State Traffic Commission, supra, 55 Conn. App. 679, the plaintiffs allege that in addition to their claim of entitlement to intervene in the administrative proceedings pursuant to § 22a-19, they have standing as classically aggrieved parties to appeal from the Commission's issuance of a certificate to Long Wharf.
The fundamental test for determining classical aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the challenged action, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. MedTrans ofConnecticut, Inc. v. Dept. of Public Health Addiction Services,242 Conn. 152, 158-59 (1997); United Cable Television Services Cop. v.Department of Public Utility, 235 Conn. 334, 342-43 (1995); R R Pool Home, Inc. v. Zoning Board of Appeals, 43 Conn. App. 563, 570-71 (1996). Whether a party is aggrieved is a question of fact. Red Hill Coalition,Inc. v. Conservation Commission, 212 Conn. 710, 716 (1989).
Though the plaintiffs urge this court to apply federal concepts of aggrievement, the Connecticut Supreme Court has ruled that "[w]e are not required to apply federal precedent in determining the issue of aggrievement. New Haven v. Public Utilities Commission, [165 Conn. 687,] 702 [(1974)]. Aggrievement is a matter to be determined solely on the basis of Connecticut law. Id., 701." Mystic Marinelife Aquarium, Inc. v.Gill, 175 Conn. 483, 494 (1978). Citizens' interests in harm to the environment, which are more broadly recognized in federal standards of aggrievement, are addressed in Connecticut to some extent by a statutory grant of standing to any person or legal entity to assert that conduct "is reasonably likely to have . . . the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or CT Page 11631 other natural resources of the state." Conn. Gen. Stat. § 22a-19. The plaintiffs sought intervention under that statute to assert the air quality issues that they sought to have the Commission consider.
The Commission asserts that the interests alleged by the plaintiffs in their appeal are insufficient to establish aggrievement. Pleading and proof of aggrievement are prerequisites t the trial court's jurisdiction over the subject matter of the appeal. Bakelaar v. West Haven,
`193 Conn, 59, 65 (1984); Beckish v. Manaforte, 175 Conn. 415 (1978). The scope of the Commission's challenge to the plaintiffs' standing is limited in the context of a motion to dismiss to the adequacy of their pleading of aggrievement, and the court has not therefore conducted an evidentiary hearing concerning proof of those factual allegations concerning the plaintiffs' interests and injury to those interests. Presentation of evidence to establish aggrievement would follow if this court found that the plaintiffs had sufficiently alleged facts concerning the interest that are affected by the challenged administrative action. They have alleged only the same kinds of impacts that the Appellate Court in Nizzardo found were insufficient to establish classical aggrievement.
The plaintiffs allege that they use the roads that will be affected by traffic from the proposed mall to commute to their businesses and jobs and to health care facilities and that they will be delayed and subjected to greater risk of motor vehicle accidents because of increased volume of traffic. Plaintiff John Isaacs alleges that the traffic congestion and delays caused by the proposed mall, in combination with another construction project, will deter customers from shopping at his store as well as others in downtown New Haven. (Appeal, paras. 28-30.) Plaintiff Reed Smith alleges that development of the mall "will negatively affect many businesses and establishments located in downtown New Haven, forcing many to close, and thereby negatively impacting the overall vitality of downtown New Haven" and thereby diminishing his enjoyment of his surroundings and the value of his apartment in New Haven. (Appeal, paras. 50-51.) Plaintiff Kurt Yolk alleges that his direct mailing business will be harmed because of delays from increased congestion resulting from the proposed mall. (Appeal, paras. 36-40.)
Plaintiffs Stewart Hutchins and Christel Manning allege that the health and environmental consequences of the increased traffic associated with the mall will substantially interfere with their ability to run and/or bicycle and "enjoy life in New Haven." (Appeal, paras. 17, 24.) Hutchings also alleges that his recreational use of the public waterfront at New Haven Harbor will be less enjoyable because of increased traffic on the adjoining roadways. (Appeal, para. 18.) Plaintiffs Hutchings and Smith allege that increased traffic is likely to produce more air pollution that will aggravate health conditions from which they suffer. (Appeal, CT Page 11632 paras. 16, 48, 49.)
The Commission asserts that the interests alleged by the plaintiffs are general interests affected only in the same way as the interests of the general public, not "specific personal and legal interests [that will be] specially and injuriously affected by the challenged action." Nizzardo v.State Traffic Commission, supra, 55 Conn. App. 686; R R Pool Home,Inc. v. Zoning Board of Appeals, supra, 43 Conn. App. 570-71. The plaintiffs take the position that by alleging frequent use of the roads to be affected by increased traffic they expect from the mall development, they sufficiently allege that they have a "specially affected" legal interest.
Anyone wishing to use the roads at issue has, of course, a right to do so. The plaintiffs have alleged no specific personal legal entitlement concerning their use of these roads nor the volume of traffic on them, as might be present if they were owners of a private roadway. Unlike the plaintiffs who were held to have sufficiently alleged aggrievement in Cohnv. State Traffic Commission, Docket No. 20653 (Conn.Super. April 5, 1987), the plaintiffs do not allege that they own and reside in premises adjacent or in close proximity to the site, such that the traffic design approved by the Commission would imperil their safety in gaining access to or leaving their own homes. In Nizzardo v. State Traffic Commission,
supra, 55 Conn. App. 687, the Appellate Court approved a determination that a general interest in the public safety of a highway system, such as all community members have, did not constitute "the specific, personal, and legal interest necessary for aggrievement, permitting an appeal from a determination regarding public safety rendered by the commission." (Internal quotation marks omitted).
In those few cases in which the alleged injury was the inconvenience or other consequences of traffic congestion, the courts have based their finding that the plaintiff had standing on the fact that the plaintiff owned a residence or operated a business in the immediate vicinity of the challenged development. In Bright v. Zoning Board of Appeals,149 Conn. 698, 704 (1962), the Supreme Court ruled that because the plaintiffs lived within 650 feet of the development project at issue, the board's decision "affected them directly or in relation to a specific, personal interest, as distinguished from a general interest, in the subject matter." The finding that the creation of traffic congestion was a sufficient allegation of aggrievement in McDermott v. Zoning Board ofAppeals, 150 Conn. 510, 513 (1963), rested on the fact that the plaintiff had alleged that he owned a gasoline station on a congested intersection located across the street from the proposed use that the zoning board was considering. In Tucker v. Zoning Board of Appeals, 151 Conn. 510, 516
(1964), the Supreme Court upheld the trial court's determination that CT Page 11633 appellants who alleged that they walked and drove past a development site were not aggrieved by the authorized development
To conclude that all those who use a roadway are aggrieved by administrative actions concerning land development along that roadway that increases traffic would give little effect to the requirement that an appellant allege and prove a "specific personal and legal interest [that] has been specially and injuriously affected by the decision." (Emphasis supplied.) United Cable Television Services Corp. v. Departmentof Public Utility Control, 235 Conn. 334, 342-43 (1995).
 Standing Based on the Environmental Protection Act
The plaintiffs raises a another basis for standing: Conn. Gen. Stat. § 22a-19 (a), of the Environmental Protection Act of 1972, Conn. Gen. Stats. §§ 22a-14, et seq., the statutory provision permitting any person or legal entity to intervene "in any administrative . . . proceeding, and in any judicial review thereof made available by law . . . on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." While it has been held that parties failing to seek to intervene in an administrative proceeding may not initiate an appeal from the agency's decision; Hyllen-Davey v. Plan andZoning Com'n of Town of Glastonbury; 57 Conn. App. 589, cert denied,253 Conn. 926 (2000), the Supreme Court has ruled that a party that files a notice of intervention with the agency has standing to appeal the environmental issues associated with the agency's decision. BranhavenPlaza, LLC v. Inland Wetlands Commission, 251 Conn. 269, 276 n. 9 (1999), citing Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 710, 715 (1989).[1] The Supreme Court did not have occasion to consider in Branhaven whether a person denied environmental intervenor status, to preserve its claim for appeal, must file an appeal within 45 days of the issuance of the agency's decision on intervention. The Appellate Court has ruled, however, that a party denied intervention as an environmental intervenor may not appeal from the final decision of the administrative agency on the basis of § 22a-19 (a), but must file a timely appeal from the denial of intervention. Nizzardo v. State TrafficCommission, supra, 55 Conn. App. 686 (the trial court properly dismissed the part of the appeal that raised denial of environmental intervenor status as untimely and the Court found that "the plaintiff is, therefore, not an environmental intervenor" and had no standing to appeal as such an intervenor.) Id.
 Relevance of Claim to Subject Matter Before the Commission
CT Page 11634
Even if any party that had attempted intervention were held to have standing to appeal from an agency's final decision pursuant to §22a-19, whether or not he or she filed a timely appeal from the ruling on intervention, standing would be limited to raising environmental issues that are defined by that statute that are related to the particular subject matter of the agency's regulatory action.
On its face, § 22a-19 authorizes intervention in "any" administrative proceeding to assert that the proceeding involves environmentally harmful conduct as defined in the statute, which is quoted above.[2] The Connecticut Supreme Court has, however, construed the statute so as to reconcile it with other statutes that limit the powers of various administrative and regulatory agencies and commissions to particular subject matter, and to allow the assertion of environmental concerns defined in § 22a-19 only if those concerns are relevant to the actual conduct being reviewed. Connecticut Fund for the Environment,Inc. v. Stamford, 192 Conn. 247 (1984); Connecticut Water Co. v.Beausoleil, 20 Conn. 38, 46 (1987). In Connecticut Fund for theEnvironment, Inc. v. Stamford, supra, 192 Conn. 249, a would-be intervenor tried to present to a board that regulated activities affecting wetlands and watercourses in Stamford evidence related to environmental concerns that it conceded were not related to inland wetlands. The Court ruled that because the agency's authority was limited to protecting inland wetlands, questions concerning air and noise pollution and environmental problems created by increased traffic should instead have been raised before the Stamford planning board, which the Court implied had jurisdiction to consider such environmental claims.Connecticut Fund for the Environment, Inc. v. Stamford, supra,192 Conn. 251.
In Middletown v. Hartford Electric Light Co., 192 Conn. 591, 597
(1984), the Supreme Court explained the scope of § 22a-19 in a case in which the plaintiff had not invoked that statute but had brought a direct claim for injunctive relief pursuant to Conn. Gen. Stat. §22a-16:
 We have recently concluded . . . that invocation of the EPA is not an open sesame for standing to raise environmental claims with regard to any and all environmental legislation. In Connecticut Fund for the Environment, Inc. v. Stamford, [supra,] 192 Conn. 247
. . ., we held that § 22a-19 of the EPA, which permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding and to raise therein environmental issues CT Page 11635 "must be read in connection with the legislation which defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate administrative bodies, f any, or in their absence by the institution of an independent action pursuant to § 22a-16."
(Emphasis supplied.)
Contrary to the position of the Commission in the instant case, the Supreme Court did not rule that § 22a-19 authorizes intervention only if the agency acting in a matter has been authorized to decide environmental matters. Rather, the Court has ruled to the effect that issues of impairment of a particular protected natural resource may be raised only in proceedings before bodies that regulate a subject matter affected by the claimed impairment.
The Court explained the scope of its ruling in Connecticut Fund for theEnvironment, Inc. v. Stamford, supra, in Connecticut Water Co. v.Beausoleil, supra, 204 Conn. 46:
 In Middletown v. Hartford Electric Light Co., [supra,] 192 Conn. . . . 596 . . . and Connecticut Fund for the Environment, Inc. v. Stamford, [supra,] 192 Conn. 250
. . ., we recognized that General Statutes § 22a-19 does not expand the jurisdictional authority of an administrative body acting pursuant to a separate act of title 22a to hear any and all environmental matters, but rather, limits an intervenor to the raising of those environmental matters which impact on the particular subject of the act pursuant to which the commissioner is acting. Middletown v. Hartford Electric Light Co., supra, [192 Conn.] 597; Connecticut Fund for the Environment, Inc. v. Stamford, supra, [192 Conn.] 250-51.[3]
(Emphasis in original; footnote added.)
The Court ruled in Beausoleil that since the commissioner whose decision was at issue in that case was acting pursuant to the provisions of the Water Pollution Control Act, Conn. Gen. Stats. §§ 22a-416, et CT Page 11636 seq., the party who intervened on the basis of § 22a-19 "was limited to raising environmental matters relating to that act." Connecticut WaterCo. v. Beausoleil, supra, 204 Conn. 47.
The Appellate Court has suggested a more limiting construction, ruling that intervention is authorized by § 22a-19 only if the administrative body has jurisdiction to act on the basis of environmental issues. For example, in Burton v. Dillman, 27 Conn. App. 479, 481, cert. denied, 223 Conn. 904 (1992), the Appellate Court upheld a dismissal for lack of standing where a party sought to intervene in a probate court matter concerning the sale of a home claimed to be an historic landmark. The court ruled that the probate court's statutory power "does not include preservation of historic landmarks nor can it claim jurisdiction over environmental issues." The court in Burton v. Dillman, supra,27 Conn. App. 481, also observed, however, that the probate court was ruling only on the proposed sale of the property, not on its use. This observation suggests an sufficient alternative reason for finding a lack of standing: the agency was not acting on conduct that actually implicated use of the claimed protected resource.
Similarly, in Connecticut Post Ltd. Partnership v. South CentralConnecticut Regional Council of Govermnents, supra, 60 Conn. App. 3 5-36, which concerns the same mall development as the case now before this court, the Appellate Court stated that "[t]he right to invoke environmental standing depends on whether the asserted environmental claim falls within the statutory jurisdiction of the particular governmental agency authorized to adjudicate such a claim."[4] While this analysis suggests a narrow reading of § 22a-19 as permitting intervention to assert environmental claims only in proceedings in which the the agency operates under a statute that authorizes review of the environmental issues raised, another statement of the court in the same case undermine such a reading. The court stated, with regard to the South Central Connecticut Regional Council of Governments (which it referred to as "the planning commission "), that "[i]t may well be that the plaintiff's complaint may invoke environmental standing to challenge future decisions by the planning commission or other government actors concerning the viability and the propriety of the Long Wharf plan as it is finally configured. The plaintiff does not, however, have such standing now."
If the Appellate Court meant that only an agency with environmental jurisdiction could consider environmental issues raised pursuant to § 22a-19, then it would be nonsensical to state that the present issue could not be presented but such issues might be presented to the very same agency in the future. The Appellate Court cannot be understood as speculating that the enabling statutes of the planning commission CT Page 11637 would be amended in the future to include environmental jurisdiction. Rather, the comment is best understood in the context of Connecticut Fundfor the Environment v. Stamford, supra, 192 Conn. 247, and Middletown v.Hartford Electric Light, supra, 293 Conn. 591, as meaning that the plaintiff might have standing as to future phases of the mall development before the same commission if those future issues are within the subject matter jurisdiction of the planning commission. If the court regarded this commission as one that would never have jurisdiction to consider issues raised under § 22a-19, it could not logically have made the comment about raising environmental issues in the future.
The agency in the case now before this court asserts that the plaintiffs lacked standing to intervene in its review of Long Wharfs application because the environmental issues that they sought to raise relate to subject matter that is not within its jurisdiction. It asserts that it is in the same position as the agency in Connecticut Fund for theEnvironment, Inc. v. Stamford, supra, 192 Conn. 247, which was asked to consider issues of air pollution when it was acting on a proposal concerning inland wetlands under a statute regulating use of inland wetlands. The court finds this analysis to be only partly accurate.
The statute under which the Commission reviewed Long Wharfs submission is Conn. Gen. Stat. 14-311 (a). That statute provides in relevant part as follows:
 No person, firm, corporation, state agency, or municipal agency or combination thereof shall build, expand, establish or operate any . . . shopping center or other development generating large volumes of traffic, having an exit or entrance on, or abutting or adjoining, any state highway or substantially affecting state highway traffic within this state until such person or agency has procured from the State Traffic Commission a certificate that the operation thereof will not imperil the safety of the public.
Conn. Gen Stat. § 14-311 (d) provides:
 [I]n determining the advisability of such certification, the State Traffic Commission shall include, in its consideration, highway safety, the width and character of the highways affected, the density of traffic thereon, the character of such traffic and the opinion and findings of the traffic authority of the municipality wherein the development CT Page 11638 is located. If the State Traffic Commission determines that traffic signals, pavement markings, channelization, pavement widening or other changes or traffic control devices are required to handle traffic safely and efficiently, one hundred percent of the cost thereof shall be borne by the person building, establishing or operating such . . . shopping center or other development generating large volumes of traffic . . .
These provisions do not entrust to the Commission authority to determine where a mall or other development that generates large volumes of traffic should be located. They do not confer authority on the Commission to act as a land use or zoning authority. Instead, the authority conferred by these provisions is to review the plans for routing and organizing the traffic generated by the use, so that the builder of such a use will not route the traffic in a way that imperils the safety of the public.
Pursuant to Conn. Gen. Stat. § 14-298, the Commission has authority to issue regulations to establish a uniform system of traffic control signals, devices, signs and markings, to review municipal plans to install traffic control signal lights, to determine which kinds of vehicles may use which highways, and to install traffic signals. Nothing in § 14-298 or any other part of Chapter 249 empowers the Commission to determine what uses may be made of land adjoining state highways.
The plaintiffs allege in their appeal that they sought to present to the Commission evidence that the proposed traffic-generator, the Long Wharf mall, would have an impact on air quality and on issues of convenience and quality of life that would be affected by the siting of source of heavy traffic on the proposed site. In the petition to intervene that they submitted to the Commission, (appended to Long Wharfs brief in support of the Commission's motion to dismiss) the plaintiffs sought to have the Commission consider whether a mall should be permitted on the proposed site because "3. Operation of the proposed regional shopping center will generate a substantial volume of motor vehicle trips in addition to those currently taking place on the highways and roads adjacent to the site. The site-generated traffic will discharge pollutants into the air, including carbon monoxide, volatile organic compounds, oxides of nitrogen and particulate matter." The petition alleges that the siting of the mall will "result in unacceptable levels of service at roadways serving the site," (Petition, para. 4.) and that the "cumulative impact of traffic generated by the proposed shopping center, in combination with other transportation projects and background traffic volume in the immediate vicinity, will add to the congest of CT Page 11639 roadways service the site and will result in associated environmental problems. (Petition, para. 5.)
No allegation in the petition to intervene is addressed to the issues of particular traffic patterns for entering and leaving the facility or safety markings in the traffic pattern for the proposed mall. All of the allegations are concerned with the determination whether a mall is a use that should be permitted by the Commission at the proposed site in view of the existing traffic in the area.
The Commission does not dispute in its motion that clean air is a natural resource, and it does not dispute that it was engaged in reviewing the roadway plan for regulating traffic in the environs of the proposed development. It points out, however, that the topic before it was not whether a mall should be developed at the site, but whether the proposals for routing and otherwise regulating traffic to and from the mall would result in a pattern that would not "imperil the safety of the public," the standard imposed by Conn. Gen. Stat. § 14-311.
The plaintiffs were asking the Commission to determine not the adequacy of Long Wharfs plan for organizing traffic but whether a mall should exist on the site at all, because of the prospect that it would generate large volumes of traffic that would result in air pollution. The plaintiffs were asking the Commission to exercise the powers of a land-use regulator. These powers are not within the Commission's jurisdiction.
The Supreme Court has not, however, as the Commission asserts, further limited intervention pursuant to § 22a-19 (a) to those agencies already charged with review of proposed developments for environmental impact. The language of that statute contains no such limitation.Connecticut Fund for the Environment v. Stamford, supra, 192 Conn. 247, and its progeny enforce a relevance standard: the intervenor must raise environmental issues relevant to the topic or function the agency is scrutinizing, not, for example, asking a wetlands agency to consider air pollution from the building proposed to be built on or near wetlands.
Contrary to the plaintiffs view, the Commission is not an agency charged with determining what uses may be made of particular sites, and it has no authority to decide whether a mall should exist on the site chosen by Long Wharf. Its jurisdiction extends only to review of the plan for operating the roadways of the facility and regulating the traffic entering and leaving the site in a manner that would not imperil the public.
The plaintiffs do not have standing to require the Commission to consider whether Long Wharf should be permitted to develop a mall on the CT Page 11640 site on the basis of asserted harm to the public trust in natural resources from creation of traffic caused by the siting of the mall. Unlike Connecticut Post Mall Limited Partnership, which has also filed an appeal from the Commission's granting of Long Wharfs application, the plaintiffs have raised only issues outside the subject matter that the Commission had authority to regulate.
 The cause of the claimed aggrievement
The test for aggrievement in the context of an appeal from the decision of an administrative agency includes not only the nature of the appellant's interest and the nature of the harm claimed, but also the nexus between the harm and the agency's action. The appellant's personal and legal interest must be "specially and adversely affected by thedecision." (Emphasis supplied.) United Cable Television Services Corp.v. Dept. of Public Utility Control, 235 Conn. 334, 343 (1995.). There is thus an element of causation inherent in the standard for aggrievement, as was quite evident in Hamann v. Newtown, 14 Conn. App. 521, 525
(1988). In that case, landowners applied to the town board of selectmen for a determination of the boundaries of a road that crossed their property. The board issued a resolution fixing the boundaries and declaring the road to be a private road, not a town highway. The applicants appealed, alleging that they were aggrieved by the declaration of the road as private. The Appellate Court ruled that the board lacked authority to make the determination whether the road was public or private and that that determination was legally the prerogative only of the town's legislative counsel. The court ruled that because the selectmen's declaration had not actually made the road a private road, the applicants were not aggrieved, as the action complained of had not caused the harm alleged.
Similarly, in the case before this court, the action of the State Traffic Commission in reviewing Long Wharfs plan for traffic management is not the action that causes the harm of which the plaintiffs complain. They are complaining about the siting of the mall and the authorization for the particular location to be used as a mall. Nothing in the statutory authority of the Commission empowered it to make that determination.
The plaintiffs apparently reason that because a denial of a traffic certificate would have stopped development of the mall, granting of a certificate caused their harm. The test for aggrievement in the context of an administrative appeal is not, however, a mere matter of causation in fact, rather the administrative agency must have made the decision that harms the plaintiffs interest. In this case, the decision that the plaintiffs challenge is the land use decision to permit the siting of the CT Page 11641 mall in the particular location at issue. Nothing in Conn. Gen. Stat. §§ 14-298 or 14-311 empowered the State Traffic Commission to determine whether a particular location was appropriate for a shopping center. For this additional reason, the plaintiffs have failed to establish classical aggrievement.
 Conclusion
The Appellate Court's holding in Nizzardo v. State Traffic Commission,
supra, 55 Conn. App. 679, requires the conclusion that the plaintiffs' appeal is untimely and that this court therefore lacks subject matter jurisdiction over their appeal as environmental intervenors pursuant to § 22a-19. Even if the appeal were to be considered timely, the plaintiffs lack standing because the issues they raise concern siting of the proposed mall are issues beyond the jurisdiction of the Commission.
The plaintiffs have not pleaded facts that sufficiently allege classical aggrievement from the Commission's final action on the application.
The motion to dismiss their administrative appeal is therefore granted. As has been explained above, the plaintiffs have combined a civil action with their administrative appeal. The court dismisses only the portion of their pleading that is the appeal from the decision of the Commission.
Beverly J. Hodgson Judge of the Superior Court